Jose VELEZ, Petitioner,

v.

**PEOPLE OF THE STATE OF NEW YORK, Respondent.**

**CV 93–3812 (ADS).**

United States District Court, E.D. New York.

July 20, 1996.

Jose Velez, Ryker's Island, OBCC, North Facility, East Elmhurst, NY, pro se.

James M. Catterson, Jr., Suffolk County District Attorney, by Barbara Rose, Assistant District Attorney, Riverhead, NY, for respondent.

SPATT, District Judge:

There having been no objections filed to the April 3, 1996 Report and Recommendation of United States Magistrate Judge Michael L. Orenstein, that the petition for a writ of habeas corpus brought pursuant to 28

U.S.C. § 2254 be denied in its entirety, it is hereby

ORDERED, that the April 3, 1996 Report and Recommendation of United States Magistrate Judge Michael L. Orenstein, that the petition for a writ of habeas corpus be denied, is adopted as the decision of this Court, it is further

ORDERED, that this action be dismissed and no certificate of probable cause be issued, and it is hereby

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

ORENSTEIN, United States Magistrate Judge.

Petitioner Jose Velez, proceeding *pro se,* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 7, 1990, Velez was found guilty after a jury trial of two counts of burglary in the second degree (N.Y.Penal Law § 140.25(2)), under indictment number 843/89. On June 14, 1990, Petitioner entered a plea of guilty to an unrelated charge of attempted burglary in the second degree (N.Y.Penal Law §§ 140.25(2) and 110.00), under indictment number 1231/89. He was sentenced as a prior felony offender on July 19, 1990, to two concurrent terms of imprisonment of six to twelve years for the crimes of burglary in the second degree, and to a two-and one-half to five-year term on the attempted burglary conviction, to run concurrently with the burglary sentences. The Appellate Division affirmed the judgments of conviction, *People v. Velez,* 188 A.D.2d 670, 592 N.Y.S.2d 270 (2d Dep't 1992), and the Court of Appeals denied Petitioner leave to appeal. *People v. Velez,* 81 N.Y.2d 894, 597 N.Y.S.2d 956, 613 N.E.2d 988 (1993).

On February 1, 1995, Petitioner was paroled. He remains on parole only on the judgments of conviction under indictment number 843/89. His sentence for attempted burglary in the second degree under indictment number 1231/89 has expired.

In his application for collateral relief, petitioner raises a number of claims. First, he contends that his guilty plea to the attempted burglary charge was unlawfully induced, or, in the alternative, was made without an appreciation of the nature of the charge or the consequences of the plea. Second, he asserts that his convictions on the burglary charges were obtained by the use of evidence secured pursuant to an unlawful arrest. Third, Petitioner maintains that the prosecution used evidence at the trial that was brought to light by an unconstitutional search and seizure. Last, he alleges that his counsel's performance was ineffective, stressing that his trial attorney failed to advise him of his right to appear before the Grand Jury, waiving his right of appearance without his prior approval, and also erroneously failed to file certain pre-trial motions, including one for dismissal of the burglary charges pursuant to the New York speedy trial statute.

The Court has reviewed carefully the submissions of the parties, as well as the full record of proceedings in the state courts. For the reasons discussed herein, this Court reports and recommends that the petition be dismissed in its entirety.

### BACKGROUND

Petitioner's trial, before the Honorable Thomas V. Mallon in Suffolk County Court, was held from June 4 through June 7, 1990. At the trial, the prosecution introduced evidence to show that on May 23, 1989, at approximately 12:30 p.m., Ms. Ellen Brown of 97 Lakeway Drive, North Babylon, New York, saw an unfamiliar automobile parked adjacent to 93 Lakeway Drive. (Tr. at 169, 186–87.) (testimony of Ellen Brown).[1] Ms. Brown observed the automobile from a window in her house that was approximately 100 to 115 feet away. *Id.* at 188, 193.

Shortly thereafter, as the car passed her house and turned the corner, Brown noticed that the car's rear license plate was covered with a piece of paper or cloth. *Id.* at 169, 198–99. At that point, she telephoned the police to report a "suspicious" vehicle. *Id.* at 169, 176. Ms. Brown's house faced both Hilltop Avenue and Lakeway, which were separated by woods. *Id.* at 169, 186. Five minutes later, the car reappeared and parked

---

**1.** References are made to the trial transcript and corresponding page number ("Tr. at ___.")

in the same place across the street from Ms. Brown's residence. *Id.* at 170. At that time, a man got out of the vehicle, opened the hatchback, and disappeared into the woods between Hilltop and Lakeway for a minute or two. *Id.* at 190. The man was dressed in a white tee shirt and tan pants. *Id.* at 173.

When the man emerged from the woods, he opened the driver's door and retrieved a tan jacket. *Id.* at 173, 190. He then put the jacket on, closed the door and hatchback, and proceeded to walk westward on Lakeway Drive. *Id.* at 170–71. When the man reached the residence located two houses west of Ms. Brown's, he turned up the driveway, and out of Brown's view. He reappeared four or five minutes later. *Id.* at 171. At that point, the man headed back eastward, and walked up the driveway at 97 Lakeway Drive. He knocked on Brown's door and rang her doorbell. Brown, who looked at him through the peephole, did not answer the door. *Id.* at 171–72. After spending some five minutes at Brown's door, the man left. *Id.* at 172, 195. He continued walking eastward from Brown's house, in the direction of his car. *Id.* at 172, 196.

After losing sight of the man for about five minutes, Ms. Brown went outside to retrieve her mail. *Id.* at 172, 197. She again espied him walking west toward his car. *Id.* at 173, 197. Brown then went inside and locked her door. When she looked out her window ten minutes later, the car was gone. *Id.* at 173. Ms. Brown made a positive courtroom identification of Petitioner as the man she witnessed engaging in the foregoing activities. *Id.* at 176–77.

The prosecution's evidence also showed that police officers Charles Peck and Steven Bluethgen received a wire transmission that a suspicious vehicle, a blue Toyota, was observed in the area of Hilltop and Lakeway. (Tr. at 207.) (testimony of police officer Charles M. Peck). When the officers turned down Hilltop heading eastbound, they saw a blue Toyota parked on the wrong side of the street pull away from the curb. Officer Peck put his flashing lights on and pulled the car over. Petitioner opened his door before he stopped his car and stopped the car when the police car stopped. Petitioner got out of his

car as the officers approached. *Id.* at 208. Officer Peck went to the driver's side of Velez's vehicle, while his partner walked to the passenger side. When asked to produce identification, Velez gave Officer Peck a photo I.D. with the name "Jose Rivera" on it. Petitioner had no driver's license and could not produce any documentation evidencing ownership of the car. *Id.* at 208–09.

When Officer Bluethgen approached Petitioner's car, he looked through the hatchback window and saw a television set situated upside down, as well as what appeared to be a white typewriter behind the television. He also spotted a black vinyl camera bag sitting on the front passenger seat. Bluethgen asked Petitioner whether he had any other identification in the camera bag, and Velez handed over certain papers from the bag. None of the papers contained Mr. Velez's name. (Tr. at 232–33.) (testimony of police officer Steven Bluethgen). Subsequently, Officer Bluethgen noticed the tape holder of a videocassette recorder ("VCR") sticking out of a white pillow case. When asked whose VCR it was, Petitioner stated that it was his mother's. *Id.* at 233. After Bluethgen glimpsed a credit card from the black bag with a woman's name on it, he asked Velez if he knew her. Velez replied that it was his aunt that he had just visited, although he could not state where she lived. *Id.* at 239. The woman apparently had been dead for a year or two. *Id.* at 239. At that moment, Petitioner proceeded to push Officer Peck and run down the street. *Id.* at 233. Officer Peck chased after him on foot and caught up with Velez one-half block up the street. A "violent struggle" ensued, with Petitioner kicking and punching Peck. Peck eventually subdued Velez and placed him under arrest for certain traffic infractions and for physically attacking him. *Id.* at 210, 226.

Seeing four or five police cars outside of her house, Ms. Brown walked out and identified herself to the police officers as the person who had telephoned the police to report the suspicious automobile. Detectives Gerard J. Grant and Bryan Burton, who had arrived on the scene, took a statement from Brown. (Tr. at 250.) (testimony of Detective

Gerard J. Grant). Brown identified Velez for the detectives as the man who had appeared at her door earlier. (Tr. at 176.) (testimony of Ellen Brown). In the meantime, officers had been canvassing the area to see whether any of the nearby houses had been burglarized. (Tr. at 251.) (testimony of Detective Gerard J. Grant). The Detectives eventually were summoned to 88 Hilltop, where they discovered an open rear window. *Id.* at 250–51. After asking neighbors where the residents of 88 Hilltop might be located, the detectives returned to the police precinct, leaving some of the officers at the scene. *Id.* at 252.

Shortly thereafter, the detectives were notified that a resident of 88 Hilltop had returned home, and responded back to that address. (Tr. at 287.) (testimony of Detective Bryan Burton). Detective Grant spoke with Desmond P. Ellis, who resided in the downstairs apartment, while Detective Burton took photographs and searched for fingerprints. *Id.* Mr. Ellis testified that when he returned home that day, his quarters had been "ransacked" and things were missing from the apartment. (Tr. at 328.) (testimony of Desmond Paul Ellis). After Detective Burton inventoried the contents of the blue Toyota that Velez had been driving, Mr. Ellis came to the precinct to view the items found in the car. He identified a necklace, earrings, VCR, VCR cover, camera, television, and black bag, in addition to a box filled with Susan B. Anthony silver dollars, Canadian coins, Jamaican coins, and Traveler's Checks he had endorsed. *Id.* at 331–35. Mr. Ellis did not give Velez permission to take the property from his home. *Id.* at 336.

Ivanhoe Lattray, the owner of the house at 88 Hilltop who lived in the upstairs apartment, testified that when he returned home at 3:00 p.m. on May 23, 1989, the apartment looked like a "hurricane." (Tr. at 352.) (testimony of Ivanhoe Lattray). Lattray also went to the police precinct to review the items located in Velez's car. *Id.* at 345. He identified Bible cassette tapes, a tape recorder, a pillow case, a VCR, and his wife's watch and wedding ring. *Id.* at 345–47. Mr. Lattray testified that he did not give Petitioner permission to either enter his home or take

any of these personal possessions. *Id.* at 344. Petitioner did not testify on his own behalf at the trial. Based on the foregoing evidence, Petitioner was convicted on June 7, 1990, of two counts of burglary in the second degree.

Velez appealed the judgments of conviction to the New York State Supreme Court, Appellate Division, Second Judicial Department. On direct appeal, Petitioner argued that his guilt had not been established beyond a reasonable doubt. He further maintained that he had been denied a fair trial on the grounds that: (1) evidence introduced to obtain his conviction was secured pursuant to an unlawful arrest; (2) statements involuntarily made by him subsequent to his arrest were admitted into evidence; (3) the show-up he was subjected to which violated his due process rights in that it was unduly suggestive; (4) he was denied his statutory right to testify before the Grand Jury; (5) the trial judge's *Sandoval* ruling, which allowed Velez's prior felony convictions into evidence, was unduly prejudicial; (6) evidence of uncharged crimes, along with a pair of gloves and a screwdriver recovered from the blue Toyota, were improperly admitted; (7) a mistrial should have been declared due to the occurrence of certain "highly prejudicial acts" at trial; (8) the prosecution's summation exceeded the bounds of fair comment; and (9) his trial counsel ineffectively represented his interests. In addition, Velez contended that his sentences on both of the burglary convictions, as well as the attempted burglary conviction, were excessive.

On December 28, 1992, the Appellate Division unanimously affirmed the burglary convictions. In an opinion reported at *People v. Velez*, 188 A.D.2d 670, 592 N.Y.S.2d 270 (2d Dep't 1992), the Appellate Division concluded that Velez's guilt indeed had been proven beyond a reasonable doubt. *Id.* at 270. They also found that the reasonable suspicion the police had for stopping Velez in the first instance rose to the level of probable cause prior to his subsequent arrest, thereby making the arrest lawful. *See id.* Furthermore, the Appellate Division ruled that the show-up identification of Velez by Brown was proper. *Id.* The court ruled Petitioner's remaining

contentions as "either unpreserved for appellate review or without merit." *Id.*

On March 25, 1993, the New York State Court of Appeals denied Velez's application for leave to appeal, *People v. Velez,* 81 N.Y.2d 894, 597 N.Y.S.2d 956, 613 N.E.2d 988 (1993), which led to the filing of the instant petition on August 20, 1993.

The procedural history of this petition having been set forth above, the Court now turns to address whether it may reach the merits of Petitioner's claims.

## DISCUSSION

I. *Availability of Federal Judicial Review of the Merits of Petitioner's Claims*

A. *The "In Custody" Requirement*

■ For a federal court to exercise jurisdiction over a habeas corpus petition, the applicant seeking the writ must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1988). A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (per curiam). All petitioners whose convictions cause them to suffer substantial restraints not shared by the public generally come within the statute's purview, and parole has long been held to constitute such a restraint. *See Jones v. Cunningham,* 371 U.S. 236, 242–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1963); *Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994); *DePompei v. Ohio Adult Parole Auth.,* 999 F.2d 138, 140 (6th Cir.1993). As Velez remains on parole for the burglary convictions, he is "in custody" for those convictions under § 2254(a).

■ Petitioner also satisfies the "in custody" requirement with respect to his attacks on the attempted burglary conviction. While Velez's two-and one-half to five-year sentence on the attempted burglary conviction expired unconditionally on July 19, 1995, at the latest,

" '[t]he federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed.' " *Scanio,* 37 F.3d at 860 (quoting *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968)). Because Petitioner filed the instant application on August 20, 1993, prior to the unconditional expiration of his sentence, the Court maintains jurisdiction over the collateral attack on the attempted burglary conviction pursuant to 28 U.S.C. § 2254.

■ Nevertheless, even after establishing statutory jurisdiction to hear the petition, the Court must still assure itself that an actual case or controversy exists, and that the application has not been rendered moot by the prisoner's unconditional release. *See* U.S. CONST. art. III, § 2.; *Benton v. Maryland,* 395 U.S. 784, 788, 89 S.Ct. 2056, 2059, 23 L.Ed.2d 707 (1969); *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964). Citing a variety of activities that the petitioner in *Carafas* was precluded from engaging in as a result of his conviction,[2] the Court there held that "[b]ecause these 'disabilities or burdens ... may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him' "; therefore, it would not be moot for the court to review the substantive merits of the habeas petition. *Carafas,* 391 U.S. at 237, 88 S.Ct. at 1559 (quoting *Fiswick v. United States,* 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946)). Shortly after *Carafas,* the Supreme Court decided *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), which, at the very least, deemphasized the necessity of specifically enumerating the collateral consequences that might follow a prisoner after his unconditional release from custody. The *Sibron* court ruled that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the

---

**2.** Specifically, the Court observed that under New York law, petitioner's status as a convicted felon prevented him from serving as a juror, engaging in certain businesses, voting in a New York State election, and holding labor union office for a specified period of time. *Carafas,* 391 U.S. at 237, 88 S.Ct. at 1559.

basis of the challenged conviction."[3] *Id.* at 57, 88 S.Ct. at 1900. The Second Circuit has interpreted *Sibron* essentially as establishing a presumption that adverse collateral consequences will flow from a criminal conviction. *See United States v. Martin–Trigona,* 759 F.2d 1017, 1024 (2d Cir.1985) ("[S]ince most criminal convictions involve some adverse collateral consequences, their existence may be presumed."); *see also Grimes v. United States,* 607 F.2d 6, 9 n. 1 (2d Cir.1979) (noting reasoning behind hearing merits of habeas petition subsequent to unconditional release "is that merely to stand 'convicted' is to be subjected to a great many 'collateral consequences'"); *cf. Crescenzi v. Supreme Court of New York,* 749 F.Supp. 552, 554 (S.D.N.Y.1990) ("[A] contempt conviction is presumed to carry sufficient collateral consequences to create an actual controversy between the parties."). Other circuits also have cited *Sibron* as support for employing the presumption. *See, e.g., Leonard v. Nix,* 55 F.3d 370, 373 (8th Cir.1995) ("Collateral consequences are presumed to stem from a criminal conviction even after release."); *Chacon v. Wood,* 36 F.3d 1459, 1463 (9th Cir.1994) (holding presumption irrebuttable).[4]

As Petitioner's sentence on the attempted burglary charge expired pending the disposition of the instant application, the Court has not been briefed by the parties on the mootness issue.[5] Therefore, the Court considers the issue *sua sponte. See United States v. Smith,* 997 F.2d 674, 676 n. 2 (10th Cir.), *cert. denied,* 510 U.S. 937, 114 S.Ct. 357, 126 L.Ed.2d 321 (1993). Here, the Court harbors serious doubts, even under the *Sibron* holding, that Petitioner has " 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him,' " *Carafas,* 391 U.S. at 237, 88 S.Ct. at 1559 (quoting *Fiswick,* 329 U.S. at 222, 67 S.Ct. at 230), so as to make his attack on the attempted burglary conviction a "case or controversy." Specifically, in light of his three prior violent felony convictions in New York alone, the Court sees little in the way of adverse collateral consequences that could befall Petitioner solely by virtue of his conviction on the attempted burglary charge. Most important, regardless of whether the conviction is invalidated, Petitioner still will be subject to an enhanced sentence under New York law should he commit another felony in the future.[6] Moreover, this Court would be hard-pressed to find under New York law, or any other state's law for that matter, any infirmities in the way of civil disabilities applicable to four-time felons that did not apply to those with two or three past felony convictions.

---

3. While *Sibron* procedurally was a criminal case appealed directly to the United States Supreme Court from the New York State Court of Appeals, the constitutional principles underpinning the mootness doctrine are identical whether a prisoner is released unconditionally pending a direct appeal of his conviction, or pending the disposition of his habeas petition in federal court.

4. Within a year of the *Chacon* decision, a separate Ninth Circuit panel, while constrained to follow circuit precedent, sharply criticized the *Chacon* holding as vitiating, in the habeas context, the constitutionally based case or controversy requirement. The Court in *Larche v. Simons,* 53 F.3d 1068, 1071 (9th Cir.1995), observed that "[t]o allow the Great Writ to be used in extremely minor cases, after sentences have been served, in the name of defendants who may not face, or perhaps are not concerned with, potential collateral consequences, is not only to cheapen the writ, but also to invite an onslaught of litigation into the federal judiciary."

5. Petitioner, proceeding *pro se,* submitted no memorandum of law with his actual petition. The court has construed the allegations set forth

in the petition generously. *See, e.g., Roldan v. Racette,* 984 F.2d 85, 87 (2d Cir.1993). When necessary, reference is made to Petitioner's brief filed with the Appellate Division in connection with his direct appeal.

6. Both burglary in the second degree and attempted burglary in the second degree are defined as violent felony offenses under New York law. *See* N.Y.PENAL LAW § 70.02(1)(b), (c), (McKinney Supp.1996). At his sentencing on July 19, 1990, Velez admitted to a prior conviction of attempted burglary in the second degree in Suffolk County in 1988. Taken together with the two second degree burglary convictions, which the Court in this decision reports and recommends as being valid, any future felony charge brought against Petitioner could subject him to an enhanced sentence in a prosecution under either the New York persistent felony offender statute, *see* N.Y.PENAL LAW § 70.10 (McKinney 1987), or the New York persistent violent felony offender statute. *See* N.Y.PENAL LAW § 70.08 (McKinney 1987).

Nevertheless, certain factors lead the Court to conclude that Petitioner's collateral attack on the attempted burglary conviction presents a justiciable case or controversy. First, the Supreme Court has set forth adverse collateral consequences that arguably could flow from the conviction. *See, e.g., Evitts v. Lucey,* 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985) ("[R]espondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding...."); *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) ("[T]he ... conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction."); *Benton,* 395 U.S. at 791, 89 S.Ct. at 2060 ("[B]oth of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial."). The likelihood that these consequences actually will ensue is irrelevant, as is the fact that Petitioner is a multiple felony offender. *See Benton,* 395 U.S. at 790–91, 89 S.Ct. at 2060–61; *Sibron,* 392 U.S. at 56, 88 S.Ct. at 1899. In addition, should Petitioner be subjected to federal prosecution in the future, the attempted burglary conviction could count as a separate offense in determining his criminal history category under the sentencing guidelines, regardless of the fact that the conviction was consolidated for sentencing with the burglary convictions. *See United States v. Bauers,* 47 F.3d 535, 538 (2d Cir.1995). Last, the High Court has expressed its disapproval of requiring a citizen to suffer a legal disability based on a prior conviction before enlisting federal aid to attack the validity of that conviction. *Sibron,* 392 U.S. at 57, 88 S.Ct. at 1899. Accordingly, the Court finds that Petitioner's attack on his attempted burglary conviction is not moot.

### B. *Exhaustion*

Under 28 U.S.C. § 2254, a federal court may not review the substantive merits of an applicant's claim for collateral relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (1988). Exhaustion is not a jurisdictional requirement. *Castille v.*

*Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673–74, 95 L.Ed.2d 119 (1987). It is predicated on principles of judicial comity, and is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); *see Pinkney v. Keane,* 920 F.2d 1090, 1094 (2d Cir. 1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991).

The Second Circuit Court of Appeals has set forth a two-pronged test to determine whether an applicant for federal habeas corpus relief has exhausted the state remedies available to him. First, the grounds asserted for relief must have been "fairly presented" to the state courts. *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir. 1992); *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). More specifically, the applicant "'must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Lebron v. Mann,* 40 F.3d 561, 567 (2d Cir.1994) (quoting *Daye,* 696 F.2d at 191). The Second Circuit, however, applies this standard liberally. A habeas petitioner need not cite "'chapter and verse'" of the Constitution to the state courts to satisfy the exhaustion rule. *Levine v. Comm'r of Correctional Servs.,* 44 F.3d 121, 124 (2d Cir.1995) (quoting *Daye,* 696 F.2d at 194). "Instead, he may fairly apprise the state court of a federal constitutional claim by relying on federal and state cases that employ a constitutional analysis, asserting the claim in terms that 'call to mind a specific right protected by the Constitution,' or alleging facts that fall 'well within the mainstream of constitutional litigation.'" *Levine,* 44 F.3d at 124 (quoting *Daye,* 696 F.2d at 194); *see Reid,* 961 F.2d at 376 (holding "minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement" where petitioner's *pro se* supplemental brief set forth no factual premises in support of the claim).

The second prong of the Second Circuit's exhaustion test generally requires that the habeas applicant "present[ ] the substance of his federal claims 'to the highest court of the

pertinent state,'" *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995), unless state collateral review is subsequently available, in which case a petitioner must first collaterally attack his conviction in the state courts. *See Dorsey v. Irvin,* 56 F.3d 425, 426 (2d Cir.1995).

■ Once the Court is satisfied that a habeas applicant has exhausted his state remedies, it does not follow necessarily that the applicant's substantive claims are amenable to federal review. "If a state court rests its judgment on an adequate and independent state ground, including a state procedural bar, [the court is] precluded from reviewing the claim on federal habeas unless the petitioner shows 'cause for the default and prejudice resulting therefrom,'" *Reid,* 961 F.2d at 377 (quoting *Gonzalez v. Sullivan,* 934 F.2d 419, 421 (2d Cir.1991)), or can demonstrate that the failure to hear the claim will result in a "'fundamental miscarriage of justice.'" *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982)); *see Wedra v. LeFevre,* 988 F.2d 334, 338 (2d Cir.1993).

■ Turning to the instant petition, Velez asserts, *inter alia,* that the police had no probable cause to arrest him, and that therefore, the items retrieved pursuant to the search of his automobile incident to the arrest should have been suppressed. Velez clearly articulated these arguments to the Appellate Division on his direct appeal. The Appellate Division dismissed Velez's contentions, stating:

> The court properly declined to suppress evidence, finding that the police legally

stopped the defendant. A review of the record demonstrates that the police had reasonable suspicion for stopping the defendant on the street, and that this reasonable suspicion escalated to probable cause prior to his arrest.[7]

*People v. Velez,* 188 A.D.2d 670, 592 N.Y.S.2d 270, 270 (2d Dep't 1992) (citations omitted). As the Appellate Division explicitly rejected Petitioner's Fourth Amendment claim on the merits, it follows that this claim was presented fairly to the state courts. The second prong of the Second Circuit's exhaustion test is also satisfied in that Petitioner included his Fourth Amendment claim in his application for leave to appeal to the Court of Appeals, New York's court of last resort,[8] and state collateral review was not subsequently available. *See Dorsey,* 56 F.3d at 426 (noting that N.Y.CRIM.PROC.LAW § 440.10(2)(a) bars collateral review of conviction if claims were raised and addressed in direct appeal).

■ Petitioner has also presented fairly his ineffective assistance of counsel claim to the state court, which, as is the case in the instant petition, was grounded primarily upon his trial attorney's alleged failure to secure his approval prior to waiving his right of appearance before the Grand Jury.[9] The Appellate Division summarily disposed of this claim, along with a number of others, as "either unpreserved for appellate review or without merit." *Velez,* 592 N.Y.S.2d at 270. Ordinarily, a federal court will not hold a claim procedurally barred "unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (internal quotations omitted). The *Harris* rule is only applicable, however, if it "'fairly appears that a state court judgment rest[s] primarily on

---

7. Prior to the probable cause hearing, the parties stipulated that if the court found the stop of Velez to be constitutional, the seizure of the items in the car also would be deemed constitutional.

8. It appears from the record that Petitioner simply forwarded the brief he submitted to the Appellate Division to the Court of Appeals. *See Schneier Letter,* dated January 4, 1993. Therefore, all of the claims the Court deems presented

fairly to the Appellate Division satisfy the exhaustion requirement.

9. Petitioner's appellate brief also referred to his trial attorney's failure to file any "pre-trial motions" as grounds for his ineffective assistance of counsel claim. While he does not allege this in his habeas petition, the Court nevertheless has evaluated the merits of this assertion. *See infra* pp. 316–319.

federal law or [is] interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision.'" *Wedra*, 988 F.2d at 338–39 (quoting *Coleman v. Thompson*, 501 U.S. 722, 739, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991)). Where, however, "the last reasoned opinion on the claim explicitly imposes a procedural default, [the Court] presume[s] that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

■ Here, Petitioner's inclusion of the grand jury argument within his ineffective assistance of counsel claim makes the procedural default analysis somewhat more complex. Specifically, the Court must ascertain whether the trial court's two pre-conviction decisions denying Velez's *pro se* motions to dismiss the burglary indictments as untimely thereby require Velez to satisfy the requisite "cause and prejudice" or "fundamental miscarriage of justice" tests before the Court will rule on the merits of the ineffective assistance claim.[10] The Court concludes that he need not. While the decisions clearly set forth an adequate and independent state ground for denial of Petitioner's motions, they did not address Petitioner's assertions within the context of an ineffective assistance of counsel claim. Therefore, the *Ylst* presumption is inapplicable. Moreover, there is clearly good reason to question whether the Appellate Division relied on an independent and adequate state ground in denying Petitioner's Sixth Amendment claim. While the Appellate Division never expressly addressed Petitioner's ineffective assistance assertion, nothing in the record indicates that the court

considered the claim unpreserved, and the State did not argue that Petitioner was procedurally barred from raising the claim on his initial appeal. *See e.g., Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993) (finding claim procedurally barred where Appellate Division affirmed conviction without opinion and, *inter alia*, procedural bar was argued by state on appeal); *Roberts v. Scully*, 875 F.Supp. 182, 192–93 (S.D.N.Y.) (finding procedural default where State relied exclusively on procedural arguments in opposing petitioner's N.Y.CRIM.PROC.L. § 440.10 motion), *aff'd*, 71 F.3d 406 (2d Cir.1995).

In light of the above, the Court finds the *Harris* rule applicable in this case. Petitioner's Sixth Amendment claim was among those rejected by the Appellate Division as "either unpreserved for appellate review or without merit." *Velez*, 592 N.Y.S.2d at 270. Thus, the state court did not state expressly whether it decided the claim on the merits or instead relied on a procedural default. *See Reid*, 961 F.2d at 376. Accordingly, the claim is properly subject to federal habeas corpus review. *Id.*

■ Petitioner failed, however, to exhaust his attack on the guilty plea he entered to the attempted burglary in the second degree charge under indictment 1231/89. Velez did not raise the issue on direct appeal to the Appellate Division. Furthermore, he never sought to attack collaterally the plea in the state court under N.Y.CRIM.PROC.LAW § 440.10. Nonetheless, the Court will not dismiss the instant application as a mixed petition, comprised of both exhausted and unexhausted claims, *see Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), because in all likelihood the New York courts would hold the claim procedurally barred.[11] Therefore, the Court

---

10. By Order dated January 23, 1990, the trial court denied Velez's *pro se* motion to dismiss the indictments for his alleged lack of notice of the Grand Jury proceeding, solely on the ground that the motion was untimely. Velez sought leave to reargue the decision, which was granted by the court by Order dated March 20, 1990. In the March 20 Order, however, the court again denied the motion on timeliness grounds.

11. Petitioner is precluded from appealing the validity of the plea, and the corresponding con

viction, to the Appellate Division. *See* N.Y.CRIM. PROC LAW § 460.10 (McKinney 1994) (giving defendant thirty days from date of judgment or sentence to file notice of appeal). In addition, should Petitioner attempt to vacate the judgment pursuant to § 440.10, the trial court would have to deny the motion if it found that sufficient facts appeared on the record to have enabled him to appeal the conviction in the first instance to the Appellate Division, and that he unjustifiably failed to do so. *See* N.Y.CRIM.PROC.LAW § 440.10(2)(c) (McKinney 1994). Here, because

cannot hear the merits of the claim unless Petitioner demonstrates "cause for the default and prejudice resulting therefrom." *Reid,* 961 F.2d at 377. Here, Velez does not allege recently discovered factual or legal bases, hitherto unknown to he or his lawyer, to support his attack on the plea, nor interference by officials that made compliance with the procedural rules impracticable, so as to constitute cause for the default. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 1776–77, 100 L.Ed.2d 249 (1988). Moreover, nothing in the record indicates that this is " 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993) (quoting *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994), so as to constitute a fundamental miscarriage of justice if the Court did not hear the claim. Accordingly, the claim is not subject to federal review.

■■■ Even were the claim not procedurally barred, a review of the record, and particularly the plea colloquy at issue, belies Petitioner's assertion that the plea was entered involuntarily. It is well-established that in accepting a guilty plea, the trial court must assure itself that the plea is both intelligent and voluntary. *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992); *Tate v. Wood,* 963 F.2d 20, 23 (2d Cir.1992). "As a general matter, a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988); *see United States v. Millan–Colon,* 829 F.Supp. 620, 635 (S.D.N.Y.1993), *aff'd,* 17 F.3d 14 (2d Cir. 1994).

■■■ A review of the plea minutes reveals that the trial court made sufficient inquiry into the validity of the plea. The minutes show that Petitioner was represented by counsel at the plea allocution and authorized his attorney to withdraw his prior plea of not guilty and enter a plea of guilty to the charge of attempted burglary. Moreover, Petitioner stated on the record that he was satisfied with the legal representation he had received in the matter, and the transcript does not suggest any reason to believe that he was inadequately counseled with regard to the plea agreement. Instead, Petitioner's attorney obtained a favorable disposition of the charge against him, whereby the District Attorney agreed to seek the minimum sentence prescribed under New York law, to run concurrently with any longer sentences imposed for the prior burglary convictions.

The record also contradicts Petitioner's allegation that he entered the plea without an appreciation of the nature of the attempted burglary charge or the consequences of the plea. When asked by the Assistant District Attorney about the circumstances surrounding the attempted burglary, Velez admitted to the crime without qualification.[12] *See*

---

the attack on the guilty plea could have been raised on direct appeal and disposed of on the basis of the existing record, the Court finds it extremely unlikely that Petitioner could proffer a sufficient argument so as to avoid a summary dismissal of the claim. Therefore, it would be fruitless to dismiss the petition without prejudice and require petitioner to return to state court to exhaust the invalid plea claim. *See Bossett,* 41 F.3d at 829.

12. The discourse between Assistant District Attorney Robert Caccese and Petitioner, testifying under oath, went as follows:

Mr. Caccese: Mr. Velez, on April 14, 1989, were you at a dwelling located at 65 Peach Street, Brentwood, New York, in Suffolk County?

The Defendant: Yes.

Mr. Caccese: And did you enter that building, that dwelling, with intent to steal property from that dwelling?

The Defendant: Yes.

Mr. Caccese: And did you have any permission to enter or take any property from that dwelling?

The Defendant: No, Sir.

Mr. Caccese: That is satisfactory to the People.

The Court: All right, Mr. Velez, then to the charge of Attempted Burglary in the Second degree, as to Count One, in satisfaction of Indictment Number 1231 of 89, how do you plead?

*Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (noting in habeas case attacking guilty plea that "[s]olemn declarations [made by a defendant] in open court carry a strong presumption of verity"). In addition, the trial court advised Petitioner of his constitutional rights under our criminal justice system, and that his guilty plea constituted a waiver of ·those rights.[13] Too, the court went to great lengths ·to .ensure that Velez· was aware of how the guilty plea could· affect him should he commit another felony in the future. The trial judge explained that he was pleading guilty to a felony, and, as a result of the plea, would be adjudged a predicate felon, subjecting himself to a possible sentence of life imprisonment under the New York State persistent felon statute for any subsequent felony conviction. The Judge honed in on the fact that the conviction at issue could be used to adjudge Velez a persistent felon.

 The trial court also determined that Petitioner's plea was entered voluntarily. Velez acknowledged that the plea was being entered of his own volition and that no threats were made against him in conjunction therewith. He also affirmed that no promises were made to him by his attorney or other court official in return for securing the plea, other than the District Attorney's promise to seek the minimum legal sentence. He does, however, allege in the petition that because he was found guilty "on a previous case, my lawyer was told by the D.A.'s office that the maximum sentence would be imposed if I was to take another case to trial." Nevertheless, Velez never alerted the trial court to this, despite ample opportunity to do so. In any event, it is not coercion if a defendant pleads guilty solely to avoid a harsher sentence. *Brady v. United States,* 397 U.S. 742, 752–53, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult

choices [is] an inevitable'—and permissible— 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973)).

In sum, nothing about the plea allocution undermined the reliability of the plea. Based on the foregoing, even were the· Court enabled to hear the plea claim on the merits, the conclusory allegations set forth in the petition would subject the claim to summary dismissal. *See Blackledge,* 431 U.S. at 74, 97 S.Ct. at 1629.

Having concluded that the exhaustion doctrine does not prevent this Court from entertaining· Velez's remaining claims, the Court now proceeds to address the merits of the petition.

## II. *Analysis of the Merits of Petitioner's Claims*

### A. *The Fourth Amendment Claim*

Federal habeas review of a state court's Fourth Amendment determination is circumscribed. In the landmark case of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in· an· unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482, 96· S.Ct. at 3046 (emphasis added); *see Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991). Subsequent to *Powell,* the Second Circuit provided more guidance in determining whether a state provides such an opportunity. In an *en banc* ruling, the full panel held that review of Fourth Amendment claims in habeas petitions would be undertaken only if "the state ... provide[d] no corrective procedures at all to redress

The Defendant: Guilty.

13. Specifically, the trial court advised Velez that by pleading guilty, he was thereby waiving his constitutional right to trial by jury, as well as his right to remain silent. In addition, the court pointed out that his guilty plea relieved the State of having to come forward with evidence establishing his guilt beyond a reasonable doubt.

314

Fourth Amendment violations," or if "the state provide[d] the process but in fact the defendant [was] precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *see Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir.1992).

The Second Circuit has admonished that the role of the federal habeas court reviewing a Fourth Amendment claim is not to sit in judgment on the merits of the state court's decision. *See Capellan*, 975 F.2d at 71–72 (holding mere disagreement with state court ruling does not rise to level of an unconscious breakdown). The court need only find that the state's procedure for resolving Fourth Amendment claims is facially adequate, and that no egregious breakdown in that procedure occurred in the petitioner's individual case. *See McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 69–70 (2d Cir.1983).

■ The State of New York provides a mechanism for adjudication of Fourth Amendment claims, embodied in N.Y.CRIM. PROC.LAW § 710.10 *et seq.* (McKinney 1995), and federal courts have approved of this procedure. *See Capellan*, 975 F.2d at 70 n. 1; *Holmes v. Scully*, 706 F.Supp. 195, 201 (E.D.N.Y.1989); *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y.1987). Therefore, "federal scrutiny of [Velez's] Fourth Amendment claim[ ] is not warranted unless he demonstrates that he was in fact precluded from utilizing [the procedure] by an unconscionable breakdown in the review process." *Shaw*, 654 F.Supp. at 864. Although the Second Circuit has not defined precisely "the sort of 'disruption or obstruction of a state proceeding'" typifying such a breakdown, *Capellan*, 975 F.2d at 70 (quoting *Shaw*, 654 F.Supp. at 864), the process employed by the New York State courts in this case obviates the need for a searching inquiry.

■ Here, Petitioner availed himself of the procedures set forth at § 710.10 *et seq.*, which resulted in *Mapp* and probable cause

hearings before the trial court on May 29, 1990. In a written opinion dated June 4, 1990, which set forth the court's Findings of Fact and Conclusions of Law, the state court found that the stop of Petitioner's vehicle was based upon reasonable suspicion. As the parties had stipulated prior to the hearing that a finding of probable cause to stop Petitioner would make the search of the car Petitioner was driving constitutional, the court denied Velez's motion to suppress. The Appellate Division subsequently affirmed the trial court's ruling on the merits. *See Velez*, 592 N.Y.S.2d at 270. In sum, the state courts provided Petitioner with a " 'reasoned method of inquiry into relevant questions of fact and law' " with respect to his Fourth Amendment claim. *Shaw*, 654 F.Supp. at 864 (quoting *Cruz v. Alexander*, 477 F.Supp. 516, 523 (S.D.N.Y.1979), *dismissed*, 622 F.2d 573 (2d Cir.1980)). It necessarily follows that Velez was not victim to an unconscionable breakdown in state procedure. Accordingly, Petitioner's Fourth Amendment claim is not reviewable by this Court.

B. *Ineffective Assistance of Counsel Claim*

To establish a violation of the Sixth Amendment right to counsel,[14] an applicant for federal habeas corpus relief must "(1) show that counsel's conduct fell below 'an objective standard of reasonableness' under 'prevailing professional norms,' and (2) 'affirmatively prove prejudice.' " *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir.) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693, 104 S.Ct. 2052, 2064, 2067, 80 L.Ed.2d 674 (1984)), *cert. denied*, —— U.S. ——, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995). With respect to the first prong, Petitioner must "overcome the strong presumption of attorney competence." *Kimmelman v. Morrison*, 477 U.S. 365, 383, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986); *see Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide

---

**14.** The Sixth Amendment right to counsel has been equated with the right to effective assistance of counsel. *See, e.g., McMann v. Richard-*

*son*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *United States v. Holmes*, 44 F.3d 1150, 1158 (2d Cir.1995).

range of reasonable professional assistance...."). Moreover, satisfaction of the second prong requires a showing that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Tarricone*, 996 F.2d 1414, 1417 (2d Cir.1993) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). Further, the applicant has the burden of "specifying what the 'shortcomings' [of counsel] are" so that the Court can apply the *Strickland* test to the allegations surrounding his claim. *United States v. Holmes*, 44 F.3d 1150, 1158 (2d Cir.1995).

Petitioner conceded in his appellate brief that "this case is not one in which the surrounding circumstances made it appear that the defendant did not receive the effective assistance of counsel." (Def.'s App.Br. at 62.) Instead, he refers to two "specific errors" allegedly made by his trial attorney. First, he claims that his trial counsel did not apprise him of his rights with respect to testifying before the Grand Jury that indicted him; specifically, he maintains that counsel waived his right of appearance without obtaining his prior consent.[15] Second, Petitioner asserts that his attorney failed to "make any pre [sic] trial motions on his behalf, including one for a violation of the speedy trial statute." *Id.* The Court will address each of these arguments in turn.

### 1. Counsel's Alleged Waiver of Grand Jury Rights

The Supreme Court has long held that the United States Constitution's Fifth Amendment provision for presentment or indictment by grand jury does not apply to the several states through the Fourteenth Amendment; in short, there is no federal constitutional right to be indicted by a grand jury prior to trial in a state criminal action. *See Alexander v. Louisiana*, 405 U.S. 625, 633, 92 S.Ct. 1221, 1226–27, 31 L.Ed.2d 536

(1972); *Hurtado v. California*, 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884); *Cobbs v. Robinson*, 528 F.2d 1331, 1334 (2d Cir.1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976); *Hamilton v. McCotter*, 772 F.2d 171, 184 (5th Cir.1985); *Smith v. Hall*, 874 F.Supp. 441, 443 (D.Mass.), *aff'd*, 62 F.3d 1411 (1st Cir.1995). Nevertheless, the New York State Constitution guarantees its citizens the right to be indicted by a grand jury when they are charged with a capital or otherwise "infamous" crime. *See* N.Y. CONST. art. I, § 6.[16] Unlike an accused's right to be *indicted* by a grand jury in New York, however, his right to *appear* before the grand jury is purely statutory. *See* N.Y.CRIM.PROC.LAW § 190.50 (McKinney 1993).

In any event, the Court must conclude that Petitioner's assertion of a defective grand jury proceeding in the state court, albeit within the confines of an ineffective assistance of counsel claim, is not cognizable on federal habeas corpus. As stated previously, Petitioner, while represented by counsel, made a *pro se* motion to dismiss the burglary indictments on the ground that he was not afforded the opportunity to testify before the grand jury. Pursuant to § 190.50, because Petitioner's motion was made more than five days after his arraignment on the charges, the trial court denied the motion as untimely.

In the Second Circuit case of *Saldana v. New York*, 850 F.2d 117 (2d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989), the Court was presented, as here, with a habeas petition seeking relief on the ground that a prisoner was denied his statutory right under New York law to appear before the grand jury. *Id.* at 117. In *Saldana*, the accused had also made a *pro se* motion seeking dismissal of the indictment. *Id.* at 118. Unlike here, however, it was conceded that the accused's motion was made timely. *Id.* Still, after reviewing the evi-

---

**15.** The record reflects that the State gave notice of the grand jury proceeding to Petitioner's retained counsel. *See Timmons Affidavit*, notarized January 12, 1990, and attached letter and notice.

**16.** The New York Court of Appeals has interpreted "infamous crime" to be an offense subjecting

one to punishment in "state's prison or for a longer term than one year in any prison," *People v. Bellinger*, 269 N.Y. 265, 271, 199 N.E. 213 (1935), which makes the grand jury provision applicable to the burglary convictions at issue here.

316

dence presented at trial that led to the petitioner's conviction, and "how unlikely it [was] that any testimony by [the petitioner] himself ... could have made any difference in the charges filed by the grand jury," the court held that the petitioner "[was] not entitled to relief in the federal courts because the State's failure to allow him to testify before the grand jury could not have made any constitutional difference because he suffered no prejudice." *Id.* at 119.

Less than six months later, having failed to "reach the propriety of raising a challenge to state grand jury proceedings in a habeas corpus petition" in *Saldana*, due to their finding that the petitioner in that case suffered no prejudice, the Second Circuit in *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989), held that such challenges were not in fact cognizable. In so concluding, the court considered the Supreme Court's holding in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) to be dispositive. In the context of an attack on a federal grand jury proceeding, the *Mechanik* court stated:

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70, 106 S.Ct. at 941–42. Employing the reasoning of *Mechanik*, the *Lopez* court held that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez*, 865 F.2d at 32.

Based on the foregoing, any alleged deficiency in the grand jury proceeding caused by the State's alleged failure to give Petitioner an opportunity to testify at the proceeding was cured by Petitioner's conviction by the petit jury. It necessarily follows as a matter of law that Velez cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation.[17] In any event, Petitioner has not stated what he would have told the grand jury if he had had the opportunity to testify, and he did not testify at trial, even though it was his constitutional right to do so. Thus, Petitioner has failed to show any prejudice resulting from the alleged failure of his attorney to secure an opportunity for him to testify before the grand jury.

### 2. Counsel's Failure to Make "Pre–Trial Motions"

Petitioner also claims a denial of effective assistance of counsel by virtue of his trial attorney's failure to "make any pre [sic] trial motions on [his] behalf, including one for a violation of the speedy trial statute." (Def.'s App. Br. at 62.) There is little merit to this contention. Defendant, through his counsel, demanded a number of pre-trial hearings for the purpose of attacking evidence the State might proffer at trial. Pursuant to these demands, the trial court held a probable cause hearing on the issue of the search and seizure of the items retrieved in Petitioner's automobile; a *Wade* hearing on the issue of Ellen Brown's identification of Petitioner; and a *Sandoval* hearing on the issue of the use of Petitioner's prior convictions and/or bad acts for impeachment purposes should he take the stand.

17. New York State courts have held that an attorney's failure to act on his client's express wish to testify before the grand jury, without more, does not give rise to an ineffective assistance of counsel claim. *See, e.g., People v. Sturgis,* 199 A.D.2d 549, 606 N.Y.S.2d 241, 243 (2d Dep't 1993), *appeal denied,* 83 N.Y.2d 858, 612 N.Y.S.2d 391, 634 N.E.2d 992 (1994); *People v. Turner,* 187 A.D.2d 469, 589 N.Y.S.2d 895, 897 (2d Dep't 1992), *appeal denied,* 81 N.Y.2d 894, 597 N.Y.S.2d 956, 613 N.E.2d 988 (1993); *People v. Hunter,* 169 A.D.2d 538, 564 N.Y.S.2d 391, 392 (1st Dep't), *appeal denied,* 77 N.Y.2d 907, 569 N.Y.S.2d 939, 572 N.E.2d 622 (1991); *People v. Sylvester,* 165 A.D.2d 920, 560 N.Y.S.2d 530, 532 (3d Dep't 1990); *People v. Planthaber,* 131 A.D.2d 927, 516 N.Y.S.2d 529, 530–31 (3d Dep't), *appeal denied,* 70 N.Y.2d 803, 522 N.Y.S.2d 120, 516 N.E.2d 1233 (1987).

Petitioner's allegation that his trial counsel's failure to make a pre-trial motion to dismiss the prosecution for violation of the "speedy trial statute" amounts to ineffective assistance of counsel also lacks merit. The Court presumes that Petitioner is referring to the New York speedy trial provision, set forth at N.Y.CRIM.PROC.LAW § 30.30 (McKinney 1992), which provides in pertinent part for mandatory dismissal of an indictment "where the people are not ready for trial within ... six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony." *Id.*

The Second Circuit, in *Parron v. Quick*, 869 F.2d 87 (2d Cir.), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 127 (1989), squarely addressed the issue of whether an attorney's failure to make a motion to dismiss a prosecution under New York's speedy trial statute could constitute ineffective assistance of counsel. In *Parron*, the petitioner had moved, both *pro se* and then by his newly-appointed counsel, to set aside his conviction pursuant to the speedy trial statute. *Id.* at 88. The trial court denied the motion alternatively on both procedural and substantive grounds. *Id.* The Appellate Division affirmed the conviction without opinion, and the Court of Appeals denied the petitioner leave to appeal. The petitioner alleged a deprivation of his federal constitutional right to a speedy trial for the first time in his habeas corpus petition; the petition was further amended to assert an ineffective assistance of counsel claim predicated on his attorney's failure to seek a pre-trial dismissal on speedy trial grounds. *Id.*

The key question for the *Parron* court was "whether the Appellate Division ... consider[ed] the speedy trial claim on the merits." *Id.* at 89. Noting that "the right to effective assistance of counsel is ... fundamental," the court held that "when a defendant presents a claim of denial of a fundamental right to the Appellate Division, and the Appellate Division affirms without opinion, a federal court should presume that the Appellate Division considered the constitutional claim and decid-

ed it on the merits, and did not base its summary affirmance on procedural default." *Id.* at 89–90. Unlike the *Parron* petitioner, Petitioner's speedy trial assertion clearly was subsumed within his ineffective assistance of counsel claim presented to the Appellate Division, which rejected the claim as "either unpreserved for appellate review or without merit." Therefore, the Appellate Division did not clearly rest its decision on a procedural bar; consequently, the Court presumes that the state court decided the ineffective assistance of counsel claim on the merits. *See Harris*, 489 U.S. at 263, 109 S.Ct. at 1043–44; *Reid*, 961 F.2d at 376. That being the case, the following reasoning employed in *Parron* would require a dismissal of the claim:

> [O]n the theory that the claim of ineffective assistance was presented to the Appellate Division and denied on the merits, the Appellate Division must have ruled that the underlying speedy trial claim had no merit since that could be the only reason for denying the claim of ineffective assistance. On that hypothesis, the federal court would be bound by the decision of the Appellate Division—even if it was erroneous—on the merits of the New York statutory speedy trial issue since that is purely a question of state law. This would necessarily dispose of the ineffective assistance of counsel claim, because [the petitioner] was not prejudiced.

*Id.* at 90; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Because of the analogous federal right to a speedy trial under the Sixth Amendment,[18] however, which has been applied to the States under the Fourteenth Amendment, Petitioner's claim arguably could be read to encompass a Sixth Amendment argument. Specifically, the terminology "speedy trial statute" could have put the Appellate Division on notice that a federal constitutional claim was at issue because it "assert[s] ...

---

18. The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the ac-

cused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI.

the claim in terms so particular as to call to mind a specific right protected by the constitution." *Grady v. LeFevre*, 846 F.2d 862, 864 (2d Cir.1988) (internal quotations omitted) (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir.1984)); *cf. Muhammad v. Kuhlmann*, No. 88 Civ. 4483 (LBS), 1989 WL 79051, at *2 (S.D.N.Y. June 27, 1989) (noting petitioner's appellate claim of ineffective assistance for refusal "to file a motion for lack of a speedy trial ... expressly implicates the constitutional right to a speedy trial guaranteed by the Sixth Amendment"). *But see Jackson v. McClellan*, No. 92 Civ. 7212 (JFK), 1994 WL 75042, at *2 (S.D.N.Y. March 4, 1994) (holding federal constitutional claim not presented to state courts where petitioner's state appellate brief argued denial of right to speedy trial under § 30.30, "merely vaguely alluded to the federal constitution in [the] point heading," and cited only New York statutory law and case law); *Woodard v. Berry*, No. CV 90–1053, 1992 WL 106508, at *2 (E.D.N.Y. April 24, 1992) (finding petitioner did not give state courts fair opportunity to consider federal speedy trial claim where he asserted right pursuant to § 30.30).

■■■ Regardless, a review of the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), to determine whether an accused's Sixth Amendment right to a speedy trial was violated [19] leads the Court to conclude that any speedy trial motion brought by Petitioner's counsel would have been unsuccessful. As an initial matter, a court will not entertain a speedy trial claim unless "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992) (quoting *Barker*, 407 U.S. at 530–31, 92 S.Ct. at 2192). Here, the 377–day period between Petitioner's arrest and the commencement of his trial, while apparently sufficient to trigger a speedy trial inquiry, *see Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. at 2691 n. 1 (noting that the lower courts have generally found

delays approaching one year as warranting further *Barker* inquiry), is certainly not extraordinary, and federal courts have found that much longer delays do not violate the Sixth Amendment. *See, e.g., Barker*, 407 U.S. at 533–36, 92 S.Ct. at 2193–95 (five years, where prejudice was "minimal" and petitioner never asserted speedy trial rights); *Flowers v. Warden, Connecticut Correctional Inst.*, 853 F.2d 131, 133 (2d Cir.) (seventeen months) (collecting cases where delays ranged from two years to five years), *cert. denied*, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988). Thus, in conjunction with the Second Circuit's observation that courts themselves "have been unable to define 'presumptively prejudicial,'" *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir.), *cert. denied*, 506 U.S. 1009, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992), it can hardly be said that trial counsel's failure to take action with respect to Petitioner's Sixth Amendment rights fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *see also Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) ("[I]t is almost impossible to say with precision exactly when a particular defendant's speedy trial right has been violated."), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

■■■ Furthermore, none of the other *Barker* factors weigh in Petitioner's favor. As to the reason for the delay, nothing in the record indicates a willful attempt by the State to delay the trial. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. On the contrary, approximately four months of the delay appears to have resulted from Petitioner's *pro se* motion to dismiss the indictment, and his subsequent *pro se* motion seeking leave to reargue the trial court's decision. Other time was spent by both Petitioner and the State serving and responding to various pre-trial demands, and conducting pre-trial conferences and hearings. In addition, the record is devoid of any assertions by Petitioner subsequent to his arrest that he was being deprived of his right to a speedy trial. *See Barker*, 407 U.S. at 532, 92 S.Ct. at 2193

19. The factors include the length of the delay, the reason for the delay, defendant's assertion of his right to a speedy trial, and prejudice to the defendant caused by the delay.

("[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").

Last, Petitioner can point to no prejudice emanating from the alleged delay in his trial. The most serious concern here is whether the defense has been impaired in any way. While "affirmative proof of particularized prejudice is not essential to every speedy trial claim," *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692, the general presumption that delay compromises the reliability of a trial increases in importance with the length of the delay. *Id.* 505 U.S. at 655, 112 S.Ct. at 2693. Here, with a delay of just over one year, the presumption is weak. *See also Vassell*, 970 F.2d at 1165 n. 1 (suggesting an affirmative showing of prejudice is necessary in absence of extraordinary delay and government negligence). Too, Petitioner can point to no staling of evidence or dimming of witness memories that impaired his ability to present a defense; in fact, Petitioner neither presented any evidence at trial, nor called any witnesses.

Accordingly, Petitioner was not denied the effective assistance of counsel at his trial.

### CONCLUSION

For the reasons set forth above, this Court respectfully reports and recommends that the petition be denied in its entirety, and that the action be dismissed. The Court further recommends that a certificate of probable cause not issue, as the petition presents no question of substance for appellate review. *See Rodriquez v. Scully*, 905 F.2d 24, 24 (2d Cir.1990) (per curiam).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 15 days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct.

825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).