Cesar A. RAMIREZ, Petitioner–Appellant,

v.

ATTORNEY GENERAL OF THE STATE OF NEW YORK; Louis F. Mann, Superintendent of Shawangunk Correctional Facility, Respondents–Appellees.

Docket No. 99–2047.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 2001.

Decided Sept. 7, 2001.

Jeremy Gutman, New York, NY, for Petitioner–Appellant.

John J. Sergi, Assistant District Attorney (Jeanine Pirro, District Attorney, and Joseph M. Latino, Assistant District Attorney, of counsel), White Plains, NY, for Respondents–Appellees.

Before: VAN GRAAFEILAND, WINTER, and SOTOMAYOR, Circuit Judges.

WINTER, Circuit Judge:

Cesar A. Ramirez appeals from Judge McMahon's denial of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. In his petition, Ramirez asserted four federal constitutional claims for relief: (i) ineffective assistance of trial counsel, (ii) erroneous evidentiary rulings amounting to a denial of confrontation rights and a fair trial, (iii) prosecutorial misconduct amounting to a denial of a fair trial, and (iv) a sentence violating the Eighth Amendment. Judge McMahon adopted the Report and Recommendation of Magistrate Judge Fox, which concluded that Ramirez had not raised his claims in the state courts and that the petition should be dismissed. *See Ramirez v. Attorney Gen.*, No. 94 Civ. 2029 (S.D.N.Y. Nov. 5, 1998); *Ramirez v. Attorney Gen.*, No. 94 Civ. 2029 (S.D.N.Y. Nov. 3, 1997) (Report and Recommendation).

Although we reach a different conclusion as to claim (i), we agree with most of the district court's analysis. Claim (iii) was presented to the Appellate Division but not to the New York Court of Appeals. Claim (iv) was presented only as a New York statutory claim in the New York appellate courts. Because New York procedural rules bar petitioner from raising these claims now, either because they have been litigated, *see* N.Y.Crim. P.L. § 440.10(2)(a); N.Y. Ct. Rules § 500.10(a), or could have been raised in earlier proceedings, *see* N.Y.Crim. P.L. § 440.10(2)(c), they are deemed to have been exhausted for purposes of 28 U.S.C. § 2254(b), (c). *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir.1991). Ramirez made no showing of cause and prejudice regarding the failure to present these claims, *see Wainwright v. Sykes*, 433 U.S. 72, 87, 97

S.Ct. 2497, 53 L.Ed.2d 594 (1977), and, therefore, we affirmed their dismissal when we granted a certificate of appealability as to claims (i) and (ii). *See Ramirez v. Attorney Gen.*, No. 99–2047, slip op. at 2 (2d Cir. Mar.17, 2000).

After review, we agree that claim (ii), the confrontation/fair trial claim, was not presented to the Court of Appeals and cannot now be pursued in the New York courts. No showing of cause and prejudice having been made, *see Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497, we affirm its dismissal. However, with respect to claim (i), the ineffective assistance claim, we hold that Ramirez's letter application to the New York Court of Appeals for leave to appeal was sufficiently specific under the test established in *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982) (en banc), to alert that Court to the federal nature of Ramirez's claim. We therefore vacate the dismissal of claim (i) and remand for further proceedings.

## BACKGROUND

Ramirez was found guilty by a New York state jury on seven counts of first-degree rape, seven counts of first-degree sodomy, two counts of incest, three counts of third-degree sodomy, one count of third-degree rape, three counts of second-degree assault, and one count of fourth-degree criminal possession of a weapon. Each of the counts involved brutal conduct toward Ramirez's then-fourteen-year-old daughter. At the time of trial, Ramirez, who had previously been convicted of drug trafficking and tax evasion, was under indictment for the murder of his second wife (he was later convicted and sentenced). He was sentenced to 58–1/3 to 175 years in prison for the crimes at issue here.

After his conviction, Ramirez retained new counsel for the appeal. The brief filed on his behalf in the Appellate Division made six claims of error, four of which are relevant to the present proceeding. Point II alleged a denial of "meaningful assistance of counsel"; Point III alleged evidentiary rulings denying his "rights of confrontation and to a fair trial"; Point IV asserted an unfair trial "due to additional errors and omissions by the court, defense counsel and the prosecutor"; and Point VI asserted that Ramirez's sentence was "harsh and excessive" but sought relief only under New York Criminal Procedure Law § 470.15(2)(c). The Second Department of the Appellate Division unanimously affirmed Ramirez's conviction. *See People v. Ramirez*, 176 A.D.2d 360, 574 N.Y.S.2d 527 (2d Dep't 1991).

On October 29, 1991, Ramirez's counsel submitted a letter to the New York Court of Appeals requesting leave to appeal and stating that a more detailed letter application would follow once a judge was assigned to the request. Pursuant to court rules, counsel also attached a copy of the Appellate Division brief.

After the application for leave to appeal was assigned to Judge Bellacosa, Ramirez's attorney submitted the promised detailed letter application. It stated by way of introduction:

> Appellant Cesar Ramirez seeks to raise two questions of law on an appeal to the Court of Appeals:
>
> I: Does defense counsel's failure to prepare for his client's trial still constitute ineffective assistance *per se* in New York, or has the long-standing rule of *People v. Bennett* been abrogated by *Strickland v. Washington?*
>
> II: Has a defendant received Due Process of law, in the form of a fair trial, where massive evidence of previous, uncharged crimes is admitted against him at trial

while, at the same time, defense counsel displays an appalling lack of preparation?

Each of these questions is discussed briefly below.

As reflected in the discussion portion of the letter application, issue "I" raised the question whether, under New York law, a defendant who shows that his counsel was inadequately prepared for trial need also show that prejudice resulted to establish ineffective assistance of counsel. *People v. Bennett*, 29 N.Y.2d 462, 467 & n. 2, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972), had held that New York law did not require a showing of prejudice where inadequate preparation of trial counsel had been demonstrated. However, the letter application noted that *Bennett* had been decided before *Strickland v. Washington*, 466 U.S. 668, 692–93, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which held that a showing of ineffective assistance under the Sixth Amendment to the U.S. Constitution generally requires both a defective representation and prejudice from it. The letter application's ensuing discussion with regard to issue I suggested that the Appellate Division had "apparently" affirmed Ramirez's conviction on the ground that there had been no showing of prejudice resulting from trial counsel's lack of preparation. The letter application inferred that this was the ground for affirmance based on an argument made by the prosecutor in that Court and a question from the Court at oral argument. The letter application then asked that leave to appeal be granted to determine whether *Bennett* reflected current New York law.

The letter application's discussion indicated that issue "II" posed the question of whether Ramirez had been accorded a trial meeting federal due process requirements where the trial court had erroneously, under New York law and the Fourteenth Amendment, admitted copious evidence of uncharged crimes and other bad acts while trial counsel failed "to render even ordinary assistance of counsel." The trial court had ruled that, under *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901), the prosecution could introduce testimony by Ramirez's daughter of beatings, threats with weapons, and repeated acts of rape and sodomy. Much of this testimony was corroborated by Ramirez's son. Ramirez's first and third wives provided further corroboration. (As noted, Ramirez had murdered his second wife, but the jury was not informed of that fact.)

The letter application's discussion of issue II stressed the prejudicial effects of both the *Molineux* rulings and counsel's inadequate preparation for, and conduct of, the trial. It stated:

> Indeed, the *Molineux* line of cases—with its heightened risk of prejudice and unfair trial—obviously relies on the assumption that a defendant will have competent, zealous counsel at his side.
>
> Unfortunately, that assumption proved inaccurate here. Defense counsel failed to interview defense witnesses, failed to obtain some defense documents and neglected to examine others before placing them into evidence. As the trial approached its end, defense counsel had to confess that he had not even studied the Indictment! See, generally, the summary of defense counsel's inadequacies above, at page 3,[1] and see Appel-

---

1. Page 3 of the letter application had catalogued trial counsel's failures as follows:

 (a) He made no written response to any of the prosecutor's extensive, devastating pretrial motions;

 (b) He cheerfully confessed himself ignorant of the cases cited by the ADA in support of those motions, but made no request for an opportunity to familiarize himself with the relevant law;

lant's Brief at pages 12–13, 17–20, 35–44, 50.

(Footnote added). The letter application then added a *"Summary:"*

> In this case a defendant was faced not only with a *Molineux* ruling so broad as to make a fair trial impossible; but was burdened with trial counsel who failed to make even the most minimal preparation for trial. He was thereby deprived of his right to a fair trial, because under this combination of circumstances *any* defendant—no matter how innocent—would inevitably be found guilty.

Finally, the letter application concluded with an *"Addendum: The Prosecutor's 'Overwhelming Evidence' Argument."* This "Addendum" argued that the prosecution's case was not strong because,

> upon examination, the evidence against [Ramirez] suffers from many defects. Briefly, the major witnesses against him—Nelly and Alex Ramirez—can easily be shown to have been hostile, biased, and dishonest. See Appellant's Brief at 8–10, 16–17, 30. The letters by Appellant to his daughter in no way prove rape or sodomy; instead, they suggest a consensual relationship be-

tween the two. Appellant's Brief at 13. Yet another "major" witness, Cleopatra Ramirez, admitted that she had recently spent time at a mental hospital and that her memory was "not too good." See Appellant's Brief at 16.

The "Addendum" concluded:

> Thus, the prosecution's case against Appellant consists of much "sound and fury," but not necessarily much substance. Appellant could not, of course, make this point adequately to the jury because he was hampered both by the trial court's adverse rulings and his trial counsel's failure to prepare his defense.

On December 11, 1991, Judge Bellacosa denied leave to appeal, finding that "there is no question of law presented which ought to be reviewed by the Court of Appeals...." *People v. Ramirez*, slip op. at 1 (N.Y. Dec. 11, 1991). On January 12, 1992, Ramirez submitted a *pro se* letter motion for reconsideration and reargument of the leave application. The sole issue presented in this motion was ineffective assistance of counsel. In support, Ramirez listed eight alleged failures of his trial counsel.[2] The *pro se* motion explicitly

---

(c) He made clear throughout the trial that he had never interviewed most of the defense witnesses prior to placing them on the stand;

(d) He freely acknowledged that he had never reviewed various documents before placing them into evidence;

(e) He was so unfamiliar with the Indictment against his client that he was unable to conduct a coherent direct examination of his own client, and had to borrow the ADA's handmade "chart" of the Indictment for that purpose;

(f) He failed to submit any requests for jury instructions, and permitted the trial court to give an improper instruction on "geographic jurisdiction"; and

(g) He made no motion addressed to specific counts of the Indictment, despite the questionable evidentiary basis for at least nine of them. See Appellant's Brief at

Point I; see also D.A.'s Brief at 20 (defense counsel's waiver of objections).

**2.** Ramirez's motion stated that:

> trial counsel failed: (1) looking up the statute(s) and cases on the alleged crime involved, (2) communicating to the defendant the prospective testimony counsel had heard, (3) identifying leads which might helpful in impeachment, (4) ascertaining facts from the defendant's point of view, (5) searching for alibi witness and getting certified evidence from the federal government as far as existing recorded tapes was concerned, (7) compiling information on the client's mental capacity, and (8) scrutinizing the list of jurors.

cited the Sixth and Fourteenth Amendments to the U.S. Constitution and mentioned the Appellate Division brief but without referring to a specific section of that brief. On March 16, 1992, Judge Bellacosa granted reconsideration but once again denied leave to appeal. *See People v. Ramirez,* slip op. at 1 (N.Y. Mar. 16, 1992).

In February 1994, Ramirez, *pro se,* filed the present habeas petition in the Southern District. The petition was assigned by Judge Parker[3] to Magistrate Judge Fox, who issued a Report and Recommendation of dismissal in September 1996. Because his report failed to note that Ramirez had raised a federal ineffective assistance of counsel claim in the *pro se* letter motion for reconsideration of the denial of leave to appeal, Judge Jones recommitted the matter to Magistrate Judge Fox in March 1997 for further proceedings. He submitted a second Report and Recommendation of dismissal in November 1997, which is the subject of this appeal.

The Magistrate Judge reasoned as follows. Ramirez's claim (iv), that his sentence violated the Eighth Amendment, had never been presented to the New York courts and is now procedurally barred in those courts. Because no relief is now available in the New York courts, the claim was deemed to have been exhausted, *see Grey,* 933 F.2d at 120–21, but nevertheless should be dismissed because no showing of cause and prejudice had been made, *see Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497. *See Ramirez,* No. 94 Civ.2029, slip op. at 14 (S.D.N.Y. Nov. 3, 1997) (Report and Recommendation). Because the confrontation/fair trial and prosecutorial misconduct issues—claims (ii) and (iii)—had not been mentioned in either counsel's letter

application for leave to appeal to the New York Court of Appeals or in Ramirez's *pro se* motion for reconsideration, they too were procedurally barred in New York courts and also had to be dismissed for lack of a showing of cause and prejudice. *See id.* at 9–12.

With regard to the Sixth Amendment claim, claim (i), the Magistrate Judge found that counsel's letter application "did not apprise the New York Court of Appeals of a federal constitutional claim of ineffective assistance of counsel." *Id.* at 9. The Magistrate Judge explained that issue I in the leave application presented only a question of New York state law. *See id.* at 6. In his view, the discussion of issue II also failed to present a federal issue because "[w]ithout mentioning or citing the Sixth Amendment, the supporting argument blends a hint or whiff of ineffective assistance of counsel with a full challenge to the correctness of the state trial court's ruling concerning [the *Molineux* issue of state law]." *Id.* at 8.

However, Ramirez's letter motion for reconsideration of the denial of the application for leave to appeal, the reason for the recommital to the Magistrate Judge, did explicitly claim a denial of the Sixth Amendment right to the effective assistance of counsel. The Magistrate Judge apparently treated this motion as a timely presentation of the federal issue to the Court of Appeals but found that it was a "mixed" claim because the *pro se* motion listed failings of counsel, *see supra* Note 2, that had not been raised in the Appellate Division. The Magistrate Judge's use of "mixed" is puzzling, because that term usually refers to a petition's assertion of exhausted and unexhausted claims requir-

---

**3.** Apparently because of difficulties in staffing the White Plains courthouse, this matter has been assigned and reassigned to Judges Brieant, Parker, Rakoff, Jones, Casey, and McMahon.

ing further state court proceedings before federal habeas review. *See Zarvela v. Artuz*, 254 F.3d 374, 376 (2d Cir.). However, the Magistrate Judge also immediately thereafter concluded that Ramirez's claims were "subject to a cause and prejudice standard"—thereby implying that they were deemed exhausted because procedurally barred in New York courts—and recommended dismissal. *Ramirez*, No. 94 Civ.2029, slip op. at 14 (S.D.N.Y. Nov. 3, 1997) (Report and Recommendation).

Ramirez, acting *pro se,* sought and was granted a certificate of appealability in this Court and was assigned counsel. The certificate was granted for the limited purpose of briefing:

(1) Whether Ramirez has "fairly presented" a federal constitutional ineffective assistance of counsel claim in the highest state court for 28 U.S.C. § 2254 exhaustion purposes, when the letter application to the Court of Appeals is silent as to the constitutional basis for the claim, but the constitutional basis was raised in his attached brief to the Appellate Division which was specifically referenced in the letter application and the letter application made general reference to the lack of harmless error in counsel's performance, and

(2) Whether Ramirez has "fairly presented" his confrontation clause and fair trial claims (except for the claim regarding the *Molineux* and *Sandoval* rulings), in the highest state court for § 2254 exhaustion purposes, when the letter application to the Court of Appeals is silent as to all other factual allegations, but those factual allegations were contained in the Appellate Division brief which was incorporated by reference in the letter application.

However, the order also affirmed the dismissal of Ramirez's prosecutorial miscon-

duct and Eighth Amendment claims. *See Ramirez*, No. 99–2047, at 2.

## DISCUSSION

 Under 28 U.S.C. § 2254(b), applicants for habeas relief serving state sentences must first exhaust all state remedies. *See Grey*, 933 F.2d at 119. State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim. *See Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye*, 696 F.2d at 191–92. Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law. *See Grey*, 933 F.2d at 120. Review of a procedurally barred claim in a federal court will, however, be subject to the cause and prejudice standard before reaching the merits. *See Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497.

Whether a federal petitioner has presented a claim to the highest state court is a frequently litigated question, particularly where, as in the case of the New York Court of Appeals, the highest state court exercises discretionary jurisdiction. An application for discretionary review may be brief, ambiguously incorporate other papers by reference, and be otherwise enigmatic.

 Generally speaking, an application for review will preserve an issue if "the nature or presentation of the claim [was] likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. Of course, "[c]iting a specific constitutional provision ... alerts state courts of the

nature of the claim." *Jones v. Vacco*, 126 F.3d 408, 413–14 (2d Cir.1997). Such specificity, however, while sufficient, is not necessary. In *Daye*, we identified other ways in which a petitioner may alert the state court to the constitutional nature of a claim without referring chapter and verse to the U.S. Constitution:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

a) *The Federal Ineffective Assistance Claim*

■ We believe that our certificate of appealability did not address the precise issue raised on this appeal. We asked the parties to brief the ineffective assistance issue as one involving a letter application by counsel that was "silent" in that regard and to discuss the relevance of the attached Appellate Division brief which explicitly raised it as a federal claim. The certificate did not mention Ramirez's *pro se* motion for reconsideration, which, as noted, had been considered by the Magistrate Judge to have timely presented a federal ineffective assistance claim. Nevertheless, the briefing of the parties addressed what we believe to be the dispositive issue. We have concluded that counsel's letter application was not "silent" but presented, although barely so, the federal ineffective assistance claim.

In our view, counsel's letter application asserted "the claim in terms so particular as to call to mind [the] specific right" to the effective assistance of counsel under the Sixth Amendment. *Daye*, 696 F.2d at 194. It is true that issue I of the letter application asserted only a question of New York law. However, the discussion of issue II expressly stated that counsel failed "to render even ordinary assistance of counsel." It incorporated by reference an itemized list of counsel's failures set out earlier in the letter, *see supra* Note 1, and connected some of those failures—i.e., not researching or responding in writing to the prosecution's pre-trial motions—to a claim of prejudice from the granting of the *Molineux* rulings. The combination of counsel's failure to contest vigorously the prosecution's pre-trial motions and the resultant rulings was described in the letter application as so lethal as to ensure the conviction of "*any* defendant—no matter how innocent . . . ." (emphasis in original).

Moreover, the Addendum in the letter application attacked the government's claim that no prejudice occurred in light of the overwhelming evidence against Ramirez. It described alleged weaknesses in the prosecution's case that were not adequately pointed out to the jury because of the trial court's rulings and "trial counsel's failure to prepare [Ramirez's] defense." Viewed as a whole, therefore, the discussion of issue II and the Addendum argued that there were lapses in representation that severely prejudiced Ramirez in various ways. This presentation is enough "to call to mind [the Sixth Amendment's] specific right [to the effective assistance of counsel]." *Daye*, 696 F.2d at 194.

Finally, these assertions also put forward "a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* They catalogue acts by trial counsel well outside professional norms, *see supra* Note 1, and claim prejudice resulting from that inadequate representation because, as argued in the Addendum, the weaknesses of the prosecution's case

were not adequately shown to the jury because of trial counsel's failures.[4] These assertions fall squarely within the two prongs of an ineffective assistance of counsel claim under *Strickland. See* 466 U.S. at 692–94, 700, 104 S.Ct. 2052.

What gives us pause, of course, is that the claim was labeled in the letter application as a "fair trial" claim, citing only the Fourteenth Amendment. Issue I, however,—the *Bennett* claim-demonstrated counsel's familiarity with *Strickland.* His failure to claim in the discussion of issue II or in the Addendum that the *Strickland* standard had been met is, therefore, eyebrow—raising. *Daye,* however, explicitly noted that counsel often assert federal constitutional claims in "fair trial" language and stated that, in determining whether such a claim "involves a [federal] constitutional claim, one must look to the factual allegations supporting the claim." 696 F.2d at 193. Although the letter application at times came close to denying that a Sixth Amendment claim was being asserted, we believe that a reasonable jurist would have perceived such a claim to have been made, albeit rather inartfully. *See Daye,* 696 F.2d at 194 (holding that interests of comity served by recognizing that state courts will perceive and acknowledge federal claims as readily as federal courts).

■ Of course, the factual basis for an ineffective assistance claim must, like other issues, be presented to all relevant state courts. *See Daye,* 696 F.2d at 191–92. Because the claim goes to the conduct of trial counsel and new counsel had been retained for the state court appeal, any factual basis not "fairly presented," *id.* at 191, to both the Appellate Division and the Court of Appeals will be procedurally barred in the state courts. *See People v.*

*Harris,* 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 & n. 3 (2d Dep't 1985); N.Y.Crim. P.L. § 440.10(2)(c). It will then be deemed exhausted in the federal courts, subject to the cause and prejudice standard.

However, in the present case, counsel's letter application sufficiently incorporated by reference the pertinent portions of the Appellate Division brief. *See Morgan v. Bennett,* 204 F.3d 360, 371 (2d Cir.), *cert. denied,* 531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000). The discussion of issue II and the Addendum together claim various kinds of resultant prejudice. Whether counsel's alleged failures listed in the letter application, *see supra* Note 1, which comprise the stated basis for the habeas petition, or the failures listed in the *pro se* motion for reconsideration, *see supra* Note 2, were preserved in the Appellate Division is left for resolution on remand.

b) *Federal Confrontation Rights*

■ Ramirez claims that he was deprived of a fair trial because he was denied his right of confrontation. His brief in the Appellate Division describes this alleged deprivation as resulting from rulings limiting his cross-examination of prosecution witnesses and excluding evidence proffered in the defense case. Although the letter application was silent as to this claim, it did refer to the portion of the Appellate Division brief that asserted it. However, that reference occurred in the following context. In the letter application's discussion of issue II, the first paragraph stated the issue as whether the combination of the *Molineux* rulings and an unprepared defense counsel denied appellant a fair trial. The next paragraph stated:

---

**4.** We note, perhaps superfluously, that we hold only that the arguments concerning the ineffective assistance of trial counsel and re- sultant prejudice were made, not that they are valid.

This issue raises important questions of Due Process of law, under N.Y. Const., Art. I, sec. 6; U.S. Const. 14th Amend. It was properly preserved in the Appellate Division. See Appellant's Brief at Points II, III and V.

Point III of the Appellate Division brief raised the confrontation/fair trial issue.

We believe that the letter application did not adequately present the confrontation/fair trial issue to the New York Court of Appeals. We held in *Morgan* that a petitioner had preserved an issue by a request that the Court of Appeals "consider and review all issues" in attached briefs from the Appellate Division. 204 F.3d at 370–71 (internal quotation marks omitted). However, the present letter application contained no such straightforward request. The letter application's reference to "[t]his issue" is clearly a reference to issue II, the *Molineux*/unprepared counsel issue. The citation to the Appellate Division brief is in support of the proposition that "[i]t," i.e., "[t]his issue," was "properly preserved" in the Appellate Division. The citation was not, therefore, a request "to consider and review" other issues raised in the referenced points of the brief.

The present case is governed rather by *Jordan v. Lefevre*, 206 F.3d 196 (2d Cir. 2000). In *Jordan*, a leave application had argued a claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and urged the New York Court of Appeals to grant leave to appeal "for all these reasons and the reasons set forth in [the] Appellate Division briefs." *Jordan*, 206 F.3d at 198 (brackets omitted); *cf. Batson*, 476 U.S. at 89, 106 S.Ct. 1712 (holding Equal Protection Clause forbids use of race-based peremptory challenges). In support of his federal petition for habeas relief, Jordan raised non-*Batson* issues that were explicitly asserted in the Appellate Division briefs but not in his leave

application to the Court of Appeals. Before us, he argued that the reference to the Appellate Division briefs sufficed to present the non-*Batson* issues to the Court of Appeals. However, we disagreed, on the ground that arguing one claim "while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement." *Jordan*, 206 F.3d at 199.

We perceive the line drawn between *Morgan* and *Jordan* to be as follows. References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal. In *Morgan*, the language unmistakably requested review of each point in the Appellate Division brief. In *Jordan*, the words "for all of these reasons and the reasons set forth in [the] Appellate Division briefs" might as easily have been a reference to additional reasons for reviewing the *Batson* claim as an incorporation of other, different claims asserted in the lower court. In the present case, the reference to the Appellate Division briefs was expressly made solely to demonstrate that the *Molineux*/unprepared counsel claim had been preserved in that Court. It did not, therefore, suffice to present an entirely different claim as a basis for review by the Court of Appeals.

Nor do we find any other grounds under *Daye* for holding that the confrontation/fair trial claim was presented to the New York Court of Appeals. As noted, a "fair trial" argument may be sufficient to present a violation of a specific federal constitutional right, *see Daye*, 696 F.2d at 193, but only where the factual allegations are within the mainstream of litigation over such rights, *see id.* Appellant's letter application contained no allegations of

facts in the mainstream of litigation over confrontation clause rights.

## CONCLUSION

As noted, we affirmed the dismissal of claims (iii) and (iv) in granting the certificate of appealability. We now affirm the dismissal of claim (ii). We vacate the dismissal of claim (i) and remand for further proceedings in accordance with this opinion.

VAN GRAAFEILAND, J., concurring.

During the past fifteen years, Cesar Ramirez was convicted following separate trials of murdering his former wife and raping and sodomizing his teenage daughter. Both convictions were challenged by petitions for habeas corpus for wrongs leading to the convictions, and both of those petitions were denied based upon alleged failure to exhaust state remedies.

In Justice Stevens' dissenting opinion in *Anderson v. Harless*, 459 U.S. 4, 8, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), he made the following cogent observation concerning federal writs of habeas corpus:

> Few issues consume as much of the scarce time of federal judges as the question whether a state prisoner adequately exhausted his state remedies before filing a petition for a federal writ of habeas corpus.

Because elaboration on the issues herein will exacerbate the delay in their resolution, I feel that the best procedure for me to follow is simply to concur in my colleagues' opinion, which I do.