Eugene S. HUTCHINGS, Petitioner,

v.

Victor HERBERT, Superintendent, Attica Correctional Facility, Respondent.

No. 01–CV–6336FE.

United States District Court, W.D. New York.

April 9, 2003.

Eugene S. Hutchings, Attica, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Petitioner Eugene S. Hutchings ("Hutchings") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction based on a guilty plea in Monroe County Court on one count of Assault in the First Degree.

## BACKGROUND

### *Factual Background*

On the night of December 29, 1997, while visiting complainant Joseph Baker ("Baker") in his home, Hutchings stabbed Baker in the neck and face several times, nearly severing his carotid artery. Hutchings was indicted in Monroe County Court (Bristol, J.) on February 17, 1998, and charged with one count of Intentional Assault in the First Degree (Penal Law § 120.01(1)) and one count of Reckless Assault in the Second Degree (Penal Law § 120.05(4)).

A jury trial commenced a few months later on May 4, 1998, but it ended in a mistrial, on defendant's motion, due to an incident that occurred during *voir dire*. The next day, however, Hutchings appeared before Monroe County Court Judge William Bristol and pleaded guilty to assault in the first degree in satisfaction of the indictment. As part of the plea agreement, Judge Bristol agreed to sentence Hutchings to a term of ten years imprisonment. When Hutchings appeared for sentencing on May 22, 1998, he attempted to withdraw his guilty plea. Sent. Tr. at 2–3. Judge Bristol denied the motion and proceeded to conduct a sentencing hearing. That hearing was later adjourned for several weeks to June 2, 1998 for a predicate felony hearing since Hutchings had refused to admit his 1998 felony conviction of burglary in the first degree. At the hearing, Hutchings apparently had a change of heart and did admit that he had been previously convicted of a felony. Predicate Felony Hrg. Tr. at 4–5. At that time, Hutchings admitted to Judge Bristol his guilt on the first degree assault charge, and Judge Bristol sentenced Hutchings to the agreed-upon ten year sentence.

### *Procedural History*

Hutchings appealed his conviction to the Appellate Division, Fourth Department on June 3, 1998, raising the same four issues that he now raises in this habeas petition: (1) his trial counsel was ineffective because he failed to make a timely motion pursuant to New York Criminal Procedure Law ("CPL") § 210.35 to have the indictment dismissed ("Claim One"); (2) the indictment was defective because Hutchings was denied his right to testify before the Grand Jury ("Claim Two"); (3) the trial court erroneously ruled on his *Sandoval* [1] motion ("Claim Three"); and (4) the trial court abused its discretion in declining to allow

---

1. *People v. Sandoval,* 34 N.Y.2d 371, 357    N.Y.S.2d 849, 314 N.E.2d 413 (1974).

him to withdraw his guilty plea ("Claim Four").

The Appellate Division, Fourth Department unanimously affirmed his conviction, *People v. Hutchings,* 263 A.D.2d 965, 693 N.Y.S.2d 469 (4th Dept.1999), and the Court of Appeals denied leave to appeal, *People v. Hutchings,* 93 N.Y.2d 1044, 697 N.Y.S.2d 876, 720 N.E.2d 96 (1999).

Hutchings filed a CPL § 440.10 motion to vacate his conviction on September 21, 2000. The sole ground alleged was that his trial counsel was ineffective for failing to move pursuant to CPL § 220.60(3) to withdraw Hutchings' guilty plea. The County Court denied the motion without opinion on October 26, 2000, and the Fourth Department denied permission to appeal on April 10, 2001. This habeas petition followed. For the reasons set forth below, Hutchings' § 2254 petition is dismissed.

## DISCUSSION

### *Exhaustion*

■ Before seeking a writ of habeas corpus in federal court, Hutchings must have exhausted all available state remedies either on direct appeal or through a collateral attack of his conviction. 28 U.S.C. § 2254(b); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). The exhaustion of state remedies requirement means that Hutchings must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See, Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.2000)(*citing Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir. 1991)). To properly exhaust a claim, Hutchings must have fairly apprized the state court of the claims's federal nature and of the factual and legal premises underlying the claim. *Grey,* 933 F.2d at 119–20.

■ Although respondent does not raise the failure to exhaust with regard to any of petitioner's claims, I believe that there is an exhaustion issue concerning Claim Three, that the trial court erred in ruling on Hutchings' *Sandoval* motion. I agree that there is no exhaustion issue as to the other claims, but there has been no exhaustion as to Claim Three.

Although Hutchings' appellate counsel raised the *Sandoval* argument in his brief to the Appellate Division, neither appellate counsel nor Hutchings raised this claim when seeking leave to appeal to the New York Court of Appeals. In appellate counsel's July 15, 1999 letter to the Court of Appeals, he states what "[t]he legal questions needing resolution are" and briefly addresses the bases for Claims One, Two and Four only. App. Counsel 7/15/99 Ltr. Req. for Lv. to Appeal, Resp't App. I at 86–87. Counsel closes the letter by stating: "For the reasons stated in the appellant's brief, appellant urges that leave to appeal be granted. Appellant specifically requests that every issue of law presented by the record in this case be considered." *Id.* Hutchings' follow-up *pro se* request, submitted August 9, 1999, discusses in detail his legal arguments corresponding to claims One, Two and Four and raises an additional ground for his ineffective assistance of counsel claim. However, Hutchings' *pro se* request makes no mention of the *Sandoval* claim. Pet'r. *Pro Se* Supp. Req. for Lv. to Appeal, Resp't App. K.

The Second Circuit's decision in *Grey v. Hoke,* 933 F.2d 117, is the starting point for the analysis of this issue. In *Grey,* the petitioner identified one claim in his leave-to-appeal letter and also attached his Appellate Division briefs, which raised three issues including the one specified in the letter. *Id.* at 120. The Second Circuit held that only the one claim which was expressly raised was properly exhausted,

noting that "[t]he only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprize the court of the two claims." *Id.* The Second Circuit declined to impose upon the New York Court of Appeals "a duty to look for a needle in a paper haystack." *Id.* (citations omitted).

The Second Circuit revisited *Grey* in *Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir.2000). As in *Grey*, the petitioner in *Jordan* argued one of his claims in the application for leave to appeal, and "asked that he be given permission to appeal 'for all these reasons and the reasons set forth in his Appellate Division briefs.'" *Id.* The court held that "arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprize the state courts of those remaining claims." *Id.*

By contrast, the petitioner in *Morgan v. Bennett*, 204 F.3d 360 (2d Cir.2000), did not identify or discuss any particular claim, but rather requested that the Court of Appeals "consider and review all issues in [petitioner's] brief and *pro se* supplemental brief." *Id.* at 369–70. The Second Circuit held that this statement was "sufficiently specific to alert the Court of Appeals that [petitioner] sought review of all of the issues raised in his *pro se* supplemental Appellate Division brief." *Id.* at 370–71. In distinguishing *Morgan,* the Second Circuit made clear that in *Jordan* it was the explicit request to review all issues in the Appellate Division briefs that made the difference: "Had [petitioner] more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only 'request[ed that the Court of Appeals] consider and review all issues outlined in [his] brief,' the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals." *Jordan,* 206 F.3d at 199 (*citing Morgan,* 204 F.3d at 370–71).

Hutchings' case is distinguishable from *Morgan.* Unlike counsel in *Morgan,* Hutchings' counsel did not request that the Court of Appeals "consider and review all issues outlined in [petitioner's] brief." *Morgan v. Bennett,* 204 F.3d at 369–70. Rather, *Grey* and *Jordan* govern Hutchings' case: counsel's mere enclosure of his Appellate Division brief in his leave to appeal application, while clearly singling out three claims "needing legal resolution," is not sufficient to constitute exhaustion of the Third Claim. *See, e.g., Ramirez v. Attorney General of New York,* 280 F.3d 87, 97 (2d Cir.2001)("References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal.") The words in appellate counsel's letter, "[f]or all of these reasons and the reasons set forth in the appellant's brief" might as easily have been a reference to additional reasons for reviewing the *Sandoval* claim as incorporation of other, different claims asserted in the lower court. *Ramirez,* 280 F.3d at 97; *see also Tirado v. Walsh,* 168 F.Supp.2d 162, 168 (S.D.N.Y.2001). Hutchings *pro se* supplemental application for leave to appeal also failed to apprize the Court of Appeals as to any constitutional defect in the *Sandoval* ruling. Neither Hutchings nor his counsel specifically referenced *Sandoval* in their submissions.

Finally, I find counsel's blanket statement that "[a]ppellant specifically requests that every issue of law presented by the record in this case be considered" to be inadequate to alert the Court of Appeals to the *Sandoval* claim. Such a statement effectively asks the Court of Appeals to "look for a needle in a paper haystack,"

which it clearly is under no obligation to do. *See Grey*, 933 F.2d at 120. Hutchings' *Sandoval* claim is therefore unexhausted.

■ It is clear that Hutchings can no longer exhaust this claim in state court. He is procedurally barred from raising the unexhausted claim before the New York Court of Appeals. Hutchings cannot again seek leave to appeal the claim in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. N.Y. Court Rules § 500.10(a). Collateral review of this claim is unavailable because it was previously determined on the merits on direct appeal. CPL §§ 440.10(2)(a); 440.10(2)(c)(barring review if claim could have been raised on direct review). Federal habeas review of this procedurally defaulted claim is only possible if Hutchings "can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *accord Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Hutchings can meet neither prong of this test.

■ First of all, Hutchings' guilty plea forecloses any possible demonstration of "actual innocence." Second, he has not attempted to allege cause for, and prejudice resulting from, his failure to exhaust the *Sandoval* claim. I find that on the facts of this case, Hutchings cannot demonstrate any prejudice arising from this default because Hutchings' guilty plea extinguished any *Sandoval* claim that he may have had. *Peterson v. LeFevre*, 753 F.Supp. 518 (S.D.N.Y.)(habeas petitioner's failure to testify at trial is fatal to any claims arising out of a *Sandoval*-type ruling because absent such testimony, a court has no "adequate non-speculative basis upon which to assess the merits of the claim"), *aff'd*, 940 F.2d 649 (2d Cir.1991); *Beverly v. Walker*, 899 F.Supp. 900, 909 (N.D.N.Y.1995). Therefore, federal habeas review of the issue in any event would not have been available. Because Hutchings cannot fulfill the cause-and-prejudice test for excusing a procedural default, Claim Three is barred.

### The Standard of Review

Because the petition, which was filed on June 28, 2001, postdates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding. *See Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). When Congress enacted AEDPA, it significantly curtailed the role of federal habeas courts in reviewing petitions filed by state prisoners. *Id.* A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is "contrary to" established federal law if the state court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495. A state court decision is an "unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular case." *Id.* at 407–08, 120 S.Ct. 1495. The Supreme

Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* In order to justify habeas relief under § 2254, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. "A state court determination of a factual issue is, moreover, presumed to be correct." *Overton v. Newton,* 295 F.3d 270 (2d Cir.2002). The state court's determination "is unreasonable only where the petitioner meets the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (*quoting* 28 U.S.C. § 2254(e)(1)).

■ Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies. For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits" and (2) reduces its disposition to judgment. *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001). On the other hand, "[i]f it cannot be determined from the state-court opinion whether the denial of a given claim was based on a procedural ground rather than on the merits, no AEDPA deference is due the state-court decision on that claim." *Rudenko v. Costello,* 286 F.3d 51, 69 (2d Cir.2002).

### Merits of the Petition

### Defective Grand Jury Proceeding Based on Denial of Petitioner's Right to Testify

■ Hutchings claims that he is entitled to federal habeas relief because the grand jury proceeding was rendered defective because he was denied the right to testify. I find that Hutchings' claim is not cognizable on federal habeas review because the right to present testimony before the grand jury is purely a matter of New York state law. It is clearly established that a federal habeas court "'may only overturn a state conviction when that conviction was obtained in violation of a federal constitutional right.'" *Lemons v. Parrott,* 2002 WL 850028, at *4 (S.D.N.Y. May 2, 2002)(*quoting Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 842 (2d Cir.1997)). It is just as well settled that a criminal defendant's right to testify before the grand jury is not a constitutional right; rather, it is a creature of state statute. CPL § 190.50(5); *Gibbs v. State of New York,* 2002 WL 31812682, at *4 (S.D.N.Y. Dec.12, 2002)(denial of opportunity to testify before grand jury "is a right created by state law alone and non-cognizable in a federal habeas proceeding"); *Green v. Artuz,* 990 F.Supp. 267, 273, & n. 8 (S.D.N.Y.1998)("The right to testify before a grand jury is a state statutory right, and is not of constitutional dimension."); *Velez v. People of the State of New York,* 941 F.Supp. 300, 315 (E.D.N.Y.1996); *Mirrer v. Smyley,* 703 F.Supp. 10, 11–12 (S.D.N.Y.), *aff'd,* 876 F.2d 890 (2d Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 106 (1989).

■ Moreover, Hutchings' guilty plea cured any possible deficiency in the grand jury proceeding caused by his failure to testify there. In *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989), the Second Circuit considered whether claims of error in a grand jury proceeding, including insufficiency of evidence and the prosecutor's failure to present exculpatory evidence, are cognizable in a habeas corpus proceeding. The court held that such challenges to a state grand jury proceeding do not state a basis for habeas relief, finding dispositive the Supreme Court's holding of *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Confronted with a constitutional attack on a

federal grand jury proceeding, the *Mechanik* court stated:

> [T]he *petit* jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the *petit* jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70, 106 S.Ct. 938 (footnote omitted).

Based on that case, the Second Circuit held that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a *petit* jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court." *Lopez*, 865 F.2d at 32.

This reasoning applies equally to a conviction based on a plea of guilty. *Alston v. Ricks*, 2003 WL 42144 at \*7 (S.D.N.Y. Jan.3, 2003)(guilty plea precluded petitioner's claim regarding prosecutorial misconduct before the grand jury); *Ballard v. Costello*, 2001 WL 1388297, at \*8 (E.D.N.Y. Nov.2, 2001)("[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding"). Since Hutchings admitted to all of the factual elements of ·the charge against him by entering a plea of guilty, any error in the proceeding which led to his indictment is rendered harmless and is not amenable to habeas review. *Lloyd v. Walker*, 771 F.Supp. 570, 576–77 (E.D.N.Y.1991)(citing

*Lopez*, 865 F.2d at 32). For these reasons, I find that Hutchings' claim that the grand jury proceeding was defective must fail.

### Ineffective Assistance of Counsel Based on Petitioner's Failure to Testify before the Grand Jury

CPL § 190.50(5)(c) requires that an indictment filed in violation of a defendant's right to testify before the grand jury must be dismissed if a motion is made pursuant to CPL § 210.35 within five days of arraignment. Hutchings claims that his trial counsel was constitutionally ineffective because his motion to dismiss the indictment was untimely under CPL § 210.35.

As stated previously, Hutchings' guilty plea cured any defect in the grand jury proceeding caused by the State's alleged failure to give Hutchings an opportunity to appear before that body. It necessarily follows as a matter of law that Hutchings cannot establish that any errors made by his trial attorney with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation.[2]

Hutchings has not stated what he would have told the grand jury that would have prevented his indictment. Hutchings thus has failed to demonstrate any prejudice resulting from the alleged failure of his attorney to ensure an opportunity for him to testify before the grand jury. *Velez v. People of the State of New York*, 941 F.Supp. 300 (E.D.N.Y.1996)(dismissing habeas claims of defective grand jury pro-

---

**2.** In order to prove that his representation was constitutionally ineffective, Hutchings must show that his counsel's performance was deficient and that he was prejudiced by the ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 690–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Importantly, New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel. *See, e.g., Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y.1994)(citing New York cases), aff'd, 58 F.3d 58 (2d Cir.1995); *People v. Hunter*, 169 A.D.2d 538, 539, 564 N.Y.S.2d 391 (1st Dept.1991); *People v. Mateo*, 252 A.D.2d 821, 677 N.Y.S.2d 187 (3d Dept.), *lv. denied*, 92 N.Y.2d 927, 680 N.Y.S.2d 469, 703 N.E.2d 281 (1998).

ceeding and ineffective assistance of counsel based on failure of attorney to secure petitioner's testimony before grand jury); *Lemons v. Parrott*, 2002 WL 850028 at *6, (S.D.N.Y. May 2, 2002)(same); *see also Saldana*, 850 F.2d at 119 ("[T]he state's failure to allow [petitioner] to testify before the grand jury could not have made any constitutional difference because he suffered no prejudice."). Had Hutchings testified before the grand jury he would have been cross-examined about his criminal record, which included several felony convictions. It is difficult to believe that by his testimony Hutchings could have helped himself in any respect. Certainly it was a reasonable tactic for defense counsel to have strongly advised Hutchings not to appear. *Saldana v. New York*, 850 F.2d 117, 121 (2d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989). Accordingly, I find that Hutchings' claim of ineffective assistance of counsel provides no basis for habeas relief.

### Trial Court's Refusal to Allow Withdrawal of the Guilty Plea

Hutchings asserts that the trial court erred in refusing to allow him to withdraw his guilty plea. The Appellate Division held that the trial court did not abuse its discretion in denying his application to withdraw his guilty plea, finding that:

> [d]uring the plea colloquy, defendant stated that he understood the consequences of his plea and admitted committing the crime charged (citations omitted). Defendant's assertion of innocence at sentencing is unsupported by the record and is insufficient to entitle defendant to withdraw his guilty plea. (citations omitted).

*People v. Hutchings*, 263 A.D.2d 965, 965, 693 N.Y.S.2d 469 (4th Dept.1999). Because the Appellate Division adjudicated this claim on the merits, AEDPA's deferential standard of review applies. *Sellan*, 261 F.3d at 309.

The Due Process Clause of the Fourteenth Amendment requires that a plea of guilty be knowingly and voluntarily entered. *Boykin v. Alabama*, 395 U.S. 238, 242–43, & n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Meachem v. Keane*, 899 F.Supp. 1130, 1139 (S.D.N.Y.1995). "A plea is made knowing[ly] when made 'with [an] understanding of the nature of the charge and the consequences of the plea.'" *Sims v. Ricks*, 2002 WL 1808207, at *3 (S.D.N.Y. Aug.6, 2002)(*quoting Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). "'[T]he standard for determining the validity of guilty pleas [is] whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.'" *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992). In this regard, the trial court judge is charged with making a searching inquiry into the circumstances surrounding the plea in order to determine whether the defendant does actually understand the significance and consequences of a particular decision. *See Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Godinez v. Moran*, 509 U.S. 389, 401, n. 12, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

Hutchings asserts that "where the allocution shows that the Defendant has a viable affirmative defense, the Court is required to conduct a hearing to determine whether the plea is knowing and voluntary ... and that the defendant is made aware of his waiver of the constitutional right to present such defense (citations omitted)." Pet'r. 8/9/99 *Pro Se* Ltr. Req. for Lv. to Appeal, Resp't. App. K at 93. He asserts that it was "plain error" for the trial court to deny his application to withdraw his plea without a hearing. *Id.*

Hutchings moved at sentencing to withdraw his plea, claiming that he had only said that he intentionally stabbed Baker

because he "was under depression" and "had stress" at the time. Sent. Tr. at 4. He also claimed that he "felt intimidated" at the plea allocution. *Id.* at 4–5. He stated that now that his "head [was] together," he believed he never should have taken the plea. *Id.*

At the plea proceedings, after satisfying himself that Hutchings was not under any mental or physical infirmity, Judge Bristol questioned Hutchings extensively about his present state of mind and ability to comprehend the plea process. Defense counsel informed the court that he had reviewed the plea waiver with Hutchings, and Hutchings stated that he understood the contents of that document. Hutchings' statements during his plea allocution simply belie his present claim of coercion:

> The Court: Mr. Hutchings, are you satisfied you have had enough time to think about what you want to do?
>
> The Defendant: Yes, sir.
>
> The Court: Are you satisfied with your lawyer's advice and representation up to this point?
>
> The Defendant: Yes.
>
> The Court: Are you satisfied, sir, that you understand all of your options and your rights?
>
> The Defendant: Yes.
>
> . . .
>
> The Court: . . . Is anybody forcing you or threatening you to make you plead guilty?
>
> The Defendant: No.
>
> The Court: Are you pleading guilty of your own free will?
>
> The Defendant: Yes.
>
> . . .
>
> The Court: . . . Do you understand by pleading guilty you're giving up all of your rights, except the right to appeal?
>
> The Defendant: Yes.

Before he pleaded guilty to assault in the first degree, Hutchings affirmed that he had answered all of the court's questions truthfully and had no questions for the court. Plea Tr. at 4–11.

Judge Bristol conducted a detailed factual colloquy, questioning Hutchings at length about the circumstances surrounding his stabbing of the victim, Baker. Hutchings admitted that he stabbed Baker, an acquaintance of his, with a knife while he was visiting at Baker's apartment, and that he "intended to cause serious physical injury." Plea Tr. at 12. Although this statement arguably would have been sufficient, Judge Bristol pursued the matter and asked Hutchings to "tell [him] in [his] own words what was going on," and stated that he wanted to "hear from [Hutchings'] own lips what happened" so as to "be sure that [Hutchings'] plea was a knowing, voluntary and an honest one." *Id.* at 12–13. Hutchings' statements during the allocution demonstrate that his plea was made voluntarily and with full knowledge of the attendant consequences.

■ Hutchings' assertion at sentencing that he "did not intentionally stab" the victim but rather had acted in "self defense," Sent. Tr. at 4, is similarly unsubstantiated by the record. At the allocution, Judge Bristol asked Hutchings twice whether Baker was armed. Hutchings admitted that he knew Baker was unarmed, and that Baker did not display a knife or other weapon to Hutchings at any time. Plea Tr. at 16; 19. Importantly, the struggle concerning Baker's alleged "sexual advances" took place in *Baker's* apartment. Plea Tr. at 18. Hutchings claimed that just prior to stabbing Baker, Baker seemed to be "looking around for something." Plea Tr. at 19. Hutchings admitted, however, that he did not flee the victim's apartment at that point but instead "stayed and stabbed [him][.]" Plea Tr. at 19. Hutchings, by his own explanation of events, thus foreclosed the

possibility of later claiming that he did not intentionally stab Baker or relying on a justification defense.[3]

■ The Second Circuit recently considered whether a trial court's refusal to hold an evidentiary hearing on a defendant's motion to withdraw his guilty plea amounts to a denial of due process. *Hines v. Miller*, 318 F.3d 157 (2d Cir.2003). In the context of determining whether state criminal procedural rules violate due process, the reviewing court must ask whether they " 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Id.* at 161–62 (*quoting Medina v. California*, 505 U.S. 437, 442–46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)(quotations omitted)). At the outset, the Second Circuit noted that under both federal and state precedent, a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *Id.* at 162(*citing, e.g., United States v. Avellino*, 136 F.3d 249, 260–61 (2d Cir. 1998); *United States v. Maher*, 108 F.3d 1513, 1529–30 (2d Cir.1997); *United States v. Williams*, 23 F.3d 629, 635(2d Cir.1994); *People v. Fiumefreddo*, 82 N.Y.2d 536, 605 N.Y.S.2d 671, 626 N.E.2d 646 (1993); *People v. Frederick*, 45 N.Y.2d 520, 524–25, 410 N.Y.S.2d 555, 382 N.E.2d 1332 (1978)). The court held that in light of these precedents, the failure to hold an evidentiary hearing on a defendant's motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice. *Id.*

This is especially true in a case such as this, where there was little or no risk of an erroneous decision by virtue of the trial court's failure to hold an evidentiary hearing. Here, the trial court scrupulously apprized Hutchings of the consequences of pleading guilty and conducted a thorough factual colloquy before accepting Hutchings' plea. When Hutchings moved to withdraw his guilty plea, he did nothing more than contradict his own statements at the time he entered the plea. The Court finds it difficult to discern how a hearing would have improved the reliability of the factual premises upon which Judge Bristol decided Hutchings' motion. The Appellate Division's conclusion that Hutchings' plea was knowingly made and that his unsubstantiated assertion of innocence was insufficient to entitle him to withdraw the plea, *People v. Hutchings*, 263 A.D.2d at 965, 693 N.Y.S.2d 469, was not an unreasonable application of clearly established Federal law. *Hines*, 318 F.3d at 162; *Medina*, 505 U.S. at 442–46, 112 S.Ct. 2572. Accordingly, I reject Hutchings' claim that the trial court erred by refusing to allow him to withdraw his guilty plea.

## CONCLUSION

For the reasons stated above, Eugene Hutchings' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Hutchings has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.

---

**3.** Under New York law, the defense of justification requires that the defendant: (a) reasonably believed that the complainant was about to use deadly physical force; and (b) satisfied his duty to retreat or was under no such duty. *McMoore v. Miller*, 2002 WL 975305, at * 10 (N.D.N.Y. Apr.19, 2002)(*citing People v. Watts*, 57 N.Y.2d 299, 456 N.Y.S.2d 677, 442 N.E.2d 1188 (1982); N.Y. Penal Law § 35.15).